[No. 1526.]

# THE STATE OF NEVADA, EX REL. A. G. FLETCHER, RELATOR, v. HENRY RUHE, W. H. NOYES, S. O. WELLS, RICHARD RYLAND AND R. S. OSBURN, AS THE CITY COUNCIL OF THE CITY OF RENO, RESPONDENTS.

CONSTITUTIONAL LAW—RENO INCORPORATION ACT—EMBRACES ONE SUBJECT—EXPRESSED IN TITLE. The act incorporating the Town of Reno (Stats. 1897, p. 50) is not in violation of section 17, article IV, of the state constitution, providing that each law shall embrace but one subject, to be expressed in the title.

IDEM—RIGHT OF SUFFRAGE AT MUNICIPAL ELECTION. Section 34 of said act incorporating the Town of Reno, requiring, for the determination of certain questions, a majority of the votes cast by the qualified electors of a city, as shown by the last official registration, is not in violation of the constitution, art. II, sec. 1, providing that every male citizen of the United States not subject to certain disabilities, and possessing certain qualifications, shall be entitled to vote, as being a disfranchisement of qualified electors who have become so since the last registration.

IDEM—RIGHT OF TRIAL BY JURY. Section 12 of said act incorporating the town of Reno, providing that the trial of all cases for the infraction of ordinances of the City of Reno of a police nature shall be summary in character before the police judge, without a jury, is not in violation of the constitutional provision according to all the right of trial by jury.

IDEM—PROPERTY QUALIFICATION FOR COUNCILMEN. Section 3 of said act incorporating the Town of Reno, prescribing a property qualification for members of the city council, is not in violation of any provision of the state constitution.

IDEM—RESTRICTION UPON POWERS TO BORROW MONEY FOR WATER SUPPLY. The said act of 1897 (p. 50), incorporating the City of Reno having been passed pursuant to article VIII, section 1 of the state constitution, permitting the creation of municipal corporations by special enactment, section 34 of said act, granting to the city the right within a certain limit to borrow money for procuring water and erecting water works, is not in violation of the constitution (art. VIII, sec. 8), providing that the legislature shall provide for the organization of cities by general laws, and restrict the power of borrowing money except for procuring a supply of water.

IDEM—APPOINTMENT OF OFFICERS—DISPOSITION OF FINES—SPECIAL ACT. The objections that the statute names therein the first members of the city council, that it constitutes county officers ex officio city officers, that it diverts fines from the school fund, that it is a special law, are all answered adversely to relator's contention in State v. Rosenstock, 11 Nev. 128.

RENO INCORPORATION ACT—CONSTRUCTION—MEANING OF "MAJORITY OF VOTES CAST." Under section 34 of the said act incorporating the Town of Reno (providing that if a majority of the votes cast of the duly qualified electors of a city, as shown by the last preceding

official registration, are in the affirmative on the question of certain
proposed improvements, the city council may borrow the money or
issue the proposed bonds), a majority of the votes cast, and not a
majority of the votes of the city election as shown by the last regis-
tration, is required to determine the questions presented.

STATUTES—HOW CONSTRUED—INTENT OF LEGISLATURE.  The object of the
interpretation of statutes is to ascertain and enforce the intention
of the legislature.  No sentence, clause or word should be con-
strued as unmeaning and surplusage if a construction can be found
legitimately which will give force and preserve all the words of the
statute.  It is a canon of construction that, if it be possible, effect
must be given to every word of an act.

INFORMATION in the nature of *quo warranto* by the State,
on the relation of A. G. Fletcher, against Henry Ruhe, W.
H. Noyes, S. O. Wells, Richard Ryland, and R. S. Osburn,
as the City Council of the City of Reno.  Judgment for
respondents dismissing the information.

The facts sufficiently appear in the opinion.

*F. H. Norcross*, for Relator:

I.  The act to incorporate the Town of Reno embraces
more than one subject and matter properly connected there-
with, and the subject thereof is not briefly or at all expressed
in the title and is, therefore, violative of article IV, section
17 of the state constitution.  In addition to the ordinary
matters and subjects usually embraced in an act incorporat-
ing a town or city, there are three or four additional or
independent subjects, to wit: the erection of water works
within or without the city limits, the erection of buildings
for city purposes, the erection of a light plant, the estab-
lishment of a free public library.  Although these last men-
tioned subjects might involve the city in a debt of from one
hundred thousand to two hundred thousand dollars, there is
nothing in the title of the act that would indicate that such
subjects were contained in the body thereof.

II.  The act to incorporate the Town of Reno may be con-
sidered a sequel of that certain act of the Legislature of
Nevada entitled "An act directing the submission of certain
questions to the electors of the Reno election precincts,
at the general election of 1896," approved March 15, 1895.
(Stats. 1895, p. 72).  In that act, the incorporation of the
town, the operation of municipal water works and municipal

light plant were made three separate questions for the elect-
ors to consider. Why, then, if in the last mentioned act
they were made three separate and distinct subjects, should
they not constitute separate and distinct subjects in the act
in question? But even if it should be held that the subjects
are all matters properly connected with the incorporation of
the city, still the act would be unconstitutional—at least, so
far as the sections cited are concerned—for the reason that
there is no mention of them in the title. (*State* v. *Silver*, 9
Nev. 227; *State* v. *Hallock*, 19 Nev. 384; *State* v. *Hoadley*, 20
Nev. 317.)

III. In appointing respondents as the City Council of the
City of Reno, the act is violative of article III, section 1 of
the constitution. (*State* v. *Kennon et al.*, 7 Ohio St. 347; 1
Cranch, 137; 4 Abbott's Pr. 35.)

IV. The act constitutes county and township officers
ex officio city officers, permanently depriving the residents
of the city of the fundamental right of local self-govern-
ment. (Constitution, art. III, sec. 1; Constitution, art. IV,
sec. 1; Constitution, art. IV, sec. 32; Constitution, art. 1, sec.
1, 20; 55 N. Y. 55; Cooley, Const. Lim. 34, 35.)

V. The act is in violation of article I, section 13 of the
constitution, in this: It apportions representation in the
city council upon a basis of geographical limits, instead of
population.

VI. The act is violative of sections 1 and 6 of article II
of the constitution, in this: By its very terms it deprives
certain qualified electors from voting at special elections,
such as the one in question in this act. All qualified electors
residing within the limits of the city, who become such as
defined by the constitution, subsequent to any general elec-
tion, are disqualified from voting at special municipal elec-
tions occurring after such election and subsequent to the next.
We have no means of knowing the number of persons who
became qualified electors in the City of Reno subsequent to
the date of the last general election and the municipal elec-
tion in question. This law permits of a minority vote con-
trolling in all special elections, a thing contrary to the
fundamental principle of government. (*Davies* v. *McKeeby*,
5 Nev. 369.)

VII.   Article I, section 3 of the constitution, provides: "The right of trial by jury shall be secured to all and remain inviolate forever," yet this act in contravention of said section provides (sec. 2) "that the trial and proceedings in all cases wherein any person or persons are charged with violating any ordinance or provision of an ordinance of the City of Reno, of a police nature, shall be summary in character, and by the police judge of Reno, without a jury."

VIII.   The act in question (sec. 34) restricts the powers of taxation assessment, borrowing money, or loaning the credit of the city for procuring a supply of water to the sum of $150,000, in contravention of section 8 of article VIII of the constitution.   It may be urged that this section of the constitution does not apply to towns or cities operating under special charter, but it is obvious that the reason why there should be no limit placed upon the amount of money that may be expended in procuring a supply of water for a town under the general act applies with equal, if not greater, force to a city operating under a special act.   (Cooley, Const. Lim. 57, 58; Broom's Maxims, 521.)

IX.   Sections 3 and 4 of the act in question, providing that freeholders alone shall be eligible to the office of councilmen in the city, is violative of the letter and spirit of the state constitution, and being so, all proceedings of respondents while pretending to act as the City Council of the City of Reno, were and are in excess of the jurisdiction of respondents, and were and are void.   (State Const. art. I, sec. 1, 20; art. II, sec. 1; art. XV, sec. 3; art. XVIII; Cooley's Const. Lim. 57, 58; Broom's Maxims, 521.

X.   It is not disputed in this case but that for the general election held November 2, 1896, there was registered in Reno voting precinct, 1303 electors, 1000 of whom resided within the limits of the City of Reno.   While the act provides that questions submitted to the qualified voters for their consideration, in order to carry must receive a majority of the votes cast of the duly qualified electors residing within the corporate limits of the City of Reno, as shown by the last preceding official registration, it appears, from the certified records of the city council now before the court, that not a single question submitted to the voters at the election held on the

7th day of October, 1897, received a majority vote of the duly qualified electors of the City of Reno, as shown by the last preceding official registration. Before the council had jurisdiction to advertise for bids for the bonds of the city, it had to affirmatively appear of record, not only that a certain vote was cast at the election on the 7th of October, 1897, but that the vote in favor of the questions submitted was a majority vote of the. qualified electors as shown by the last preceding official registration.

*Torreyson & Summerfield,* for Respondents:

I. The title of the act briefly expresses the subject of the act and is in conformity with the requirement of the constitution. The act itself embraces but one subject and matter properly connected therewith. The general subject of the act is the "incorporation of the Town of Reno," which subject is briefly and concisely stated in the title. "It has been held in many cases that an act entitled in general terms an act to incorporate a town may lawfully provide all means necessary for the government of the town, including taxation, courts, definition of misdemeanors, punishment of offenders, *municipal improvements,* etc." (*Ex parte Liddell,* 93 Cal. 637; *State* v. *Town of Union,* 33 N. J. L. 350; *Lockhart* v. *Troy,* 48 Ala. 579; *Harris* v. *People,* 59 N. Y. 599; *State* v. *Madson,* 43 Minn. 438; *State* v. *Commissioners,* 22 Nev. 405; Cooley, Const. Lim. 172; 23 Am. & Eng. Ency. of Law, 247, 248.

II. "It seems well settled that it is not necessary that the title of an act should embrace an abstract or catalogue of its contents." (*Abeel* v. *Clark,* 84 Cal. 229; *Montclair* v. *Ramsdell,* 107 U. S. 155; *People* v. *Hazlewood,* 116 Ill. 327; *Hope* v. *Gainsville,* 72 Ga. 250; *Alleghany Co.* v. *Home's Appeal,* 77 Pa. 80; *State* v. *Barrett,* 24 Kan. 218.)

III. An examination of the statutes of Nevada shows that in .every instance of the incorporation of a city by a special act of the legislature the title of the act has been similar to the one by this proceeding assailed. (Stats. 1864, p. 98, 110; Stats. 1864–5, p. 230; Stats. 1869, p. 162; Stats. 1873, p. 77; Stats. 1875, p. 87; Stats. 1877, p. 99.)

IV. These statutes show the legislative construction placed upon this section of the constitution with reference to its

application to municipal incorporation acts from the time of the adoption of the constitution until the present time. (*State* v. *Grey*, 21 Nev. 287; Cooley, Const. Lim. 82; Endlich's Interp. of Stats. 527; *Bingham* v. *Miller*, 17 Ohio, 445; *People* v. *La Salle Co.*, 100 Ill. 495; *Mining Co.* v. *Seawell*, 11 Nev. 399.)

V. Relator's contention that the appointment of a provisional city council in the body of the act, to serve until the next general election, is violative of the constitution, has been decided differently by this court and the matter is now *stare decisis* in Nevada. (*State* v. *Rosenstock*, 11 Nev. 128; *Clarke* v. *Irwin*, 5 Nev. 111.)

VI. Relator's objection and argument that the act is violative of the constitution in designating certain county officers as ex officio city officers, and thereby depriving the residents of the city of local self-government, has also been decided adversely by this court, and is no longer an open question. (*State* v. *Rosenstock*, 11 Nev. 128.)

VII. There is nothing in the act, in relator's petition, nor in the return thereto, showing or indicating that the geographical ward boundaries are not fixed upon a basis of population, and the court will entertain no presumptions upon that subject—at least, not for the purpose of declaring an act unconstitutional. The constitutional provisions cited by relator do not sustain his contention upon this point. They do not refer to municipal representation at all.

VIII. Relator's objection to the act as being unconstitutional, because it makes the last preceding official registration the test of the right to vote at special elections held for the purpose of submitting municipal questions, is untenable and is not sustained by either the provisions of the constitution or the terms of the act, and there is certainly nothing contained in relator's petition, or in the return thereto, showing that enough electors possessing the qualifications entitling them to vote to have changed the result of the election were deprived of the right to vote. In fact, it does not appear that any elector was deprived of such right. The Statutes of 1889, p. 14, providing for holding a special election at which certain proposed amendments to the state constitution were to be voted upon, adopted the last preceding registry lists as a test of the elector's right to vote at that

election, and this court declared such adoption a commendable act of legislative authority calculated to facilitate rather than to impede the exercise of the right to vote. (*State* v. *Board of Examiners,* 21 Nev. 67.)

IX.   The provisions of the act not being violative of the constitution, in order to invalidate the election it would be necessary to show that a sufficient number of constitutionally qualified electors were prevented from voting to change the result of the election in order for relator to prevail in this proceeding. (McCrary on Elections, sec. 546; *First Parish* v. *Stearns,* 21 Mich. 148; *Trustees* v. *Gibbs,* 2 Cush. 39.)

X.   The constitutional guarantee of the right of trial by jury is not strictly applicable to prosecutions for violations of municipal police ordinances. In such case the trial may be summary in character without a jury. (1 Dillon, Municipal Corporations, 3d ed. p. 424; *Byers* v. *Commonwealth,* 42 Pa. St. 89; *McGear* v. *Woodruff,* 33 N. J. Law, 213; *Vason* v. *Augusta,* 38 Ga. 542.)

XI.   Section 8 of article VIII of the constitution is applicable only to towns and cities organized under a general law, and is entirely without effect upon cities incorporated by special act. The legislature possesses such legislative powers as are not inhibited by the constitution.

XII.   The provisions of the Constitution of Nevada do not sustain relator's contention that it is beyond the authority of the legislature to make the ownership of real estate a qualification to holding the municipal office of city councilman. The right to make such ownership a qualification not being inhibited by either an express provision of the constitution, or by its spirit, or any fair implication, relator's argument is without merit.

XIII.   Relator's contention that, in order to authorize respondents to issue and sell the bonds of the City of Reno, as proposed by respondents in their advertisements for bids, it was necessary that at the special election of October 7, 1897, a majority of the number of electors registered in Reno at the general election of 1896 should vote in favor thereof, is untenable and is unwarranted by the language of the act when examined in the light of the accepted rules of statutory construction. The construction urged by relator utterly

ignores the significance of the word *cast*. No part of a
statute should be rendered nugatory, nor any language
turned to mere surplusage, if such consequences can be
avoided with propriety. (*Torreyson* v. *Examiners*, 7 Nev. 19;
*State* v. *Ross*, 20 Nev. 61; *Ex parte Siebenhauer*, 14 Nev. 365.)

By the Court, BELKNAP, C. J.:

This is an information in the nature of *quo warranto* for
the purpose of determining the constitutionality of the act
entitled "An act to incorporate the Town of Reno " (Stats.
1897, p. 50), under which respondents hold office.

Respondents demurred to the information upon the ground
that it did not state facts sufficient to constitute a cause of
action.

It is first claimed in behalf of relator that the act is
violative of article IV, section 17 of the constitution, which
requires· "that each law enacted by the legislature shall
embrace but one subject and the matter properly connected
therewith, which subject shall be briefly expressed in the
title." * * * It is said that the act not only embraces
the incorporation of the City of Reno, but three or four other
independent subjects not indicated by the title.

This restriction upon the legislature was considered in the
case of *State* v. *Silver*, 9 Nev. 231. It was there said that the
design of the constitution, in requiring that each enactment
should contain but one subject and matter properly connected
therewith, was to prevent improper combinations to secure
the passage of laws having no necessary or proper relation,
and which as independent measures could not be carried,
and also that neither the members of the legislature nor the
public should be misled by the title.

"The general purpose of these provisions is accomplished
when a law has but one general object which is fairly indi-
cated by its title. To require every end and means necessary
or convenient for the accomplishment of this general object
to be provided for by a separate act relating to that alone,
would not only be unreasonable, but would actually render
legislation impossible." (Cooley, Const. Lim. 143.)

Accordingly, this court held that under an· act entitled
"An act to provide for the taking care of the insane of the

State of Nevada," properly embraced not only the construction of an asylum, but the proceedings by which the money for its cost should be taken from the state school fund and in its place state bonds deposited, and a levy of a tax for the redemption of the bonds and interest. In that case it was said that the different steps to be accomplished are not different subjects, but minor parts of the same general subject, to wit: the care of the insane.

In *Harris* v. *The People*, the constitutionality of an act entitled "An act to revise the charter of Long Island City" was attacked upon the ground that it contained more than one subject and that the title did not express the subject of the creation of the court of Long Island City, whose jurisdiction was assailed. The court said: "We think it plain that an act creating a municipality, and giving to it the necessary legislative, taxing, judicial, and police powers, embraces but one subject. Every municipality, to be of benefit to its citizens, and to be efficient in its action, must have such powers to a greater or less extent. Any act which sets out to erect a municipality must give to it these powers or it is passed in vain. It follows, then, that the separate provisions of the act defining and granting these powers are but parts of a whole and essential to make a whole. The whole thing, the creation of the municipality, is the subject of the act, and the parts of it are not separate subjects, but separate parts of one subject. So that the act under which Long Island City was first incorporated embraced but one subject, to wit: the erection of that municipality. The title of that act, 'An act to incorporate Long Island City,' expressed clearly that subject." (59 N. Y. 601.)

The city council is authorized under certain restrictions to borrow a sum of money not to exceed $150,000 for the purpose of securing a supply of water for the city and the erection of water works, and also to establish an electric light plant or gas works for lighting the streets and houses. The charter provides that these matters shall be submitted to the electors of the city, and if a majority of the votes cast by the duly qualified electors residing within the corporate limits of the City of Reno, as shown by the last preceding official registration, are in the affirmative, the city council

may borrow the money or issue the proposed bonds, etc.
Accordingly certain questions framed to meet the issues were
submitted to the people for their action. It is contended
that the submission of these questions was unconstitutional.
Section 1 of article II of the constitution provides that
"Every male citizen of the United States (not laboring
under the disabilities named in this constitution), of the age
of twenty-one years and upwards, who shall have actually,
and not constructively, resided in the state six months, and
in the district or county thirty days next preceding any elec-
tion, shall be entitled to vote for all officers that now are
or hereafter may be elected by the people and upon all ques-
tions submitted to the electors at such election."

It is said that by adopting the last official registration
as the test for the qualification of electors, those who had
become electors between the general election of 1896 and the
municipal election of October 7, 1897, were disfranchised
because their names could not be on the registry list.

A question of the same nature arose in *Weil* v. *Calhoun*, 25
Fed. 865. It was charged among other things that the reg-
istration act made no provision for the registry of persons
who, though not entitled to vote when the books were closed,
yet became so during the ten days intervening after the clos-
ing of the books and the registration. After considering the
objections made to the registry law, the court said: "It
seems to me that such objections to the registration ought, for
reasons of public policy, to conform to the rules applicable
to objections to election not held in strict conformity to law,
to wit: it should be made affirmatively to appear that the
result would have been different had the illegality not existed.
Perhaps the voter might have private redress for the wrong
done him in refusing his vote, but that is a very different
thing from making an election void on a mere abstraction
not affecting the result."

In the American and English Encyclopedia of Law, vol.
6, p. 289, it is said: "If a registry is had under an uncon-
stitutional law and an election held upon the basis of such
registry, there can be little, if any, doubt that the election
will be held valid unless it is shown that a sufficient number

of legal voters to have changed the result were prevented by such law from casting their ballot."

Again, it is claimed that none of the questions submitted to the voters were carried by the vote of the majority of the 1303 electors of the City of Reno, as shown by the official registration of 1896. The portion of the statute affecting the subject is as follows:

"Sec. 34.   *   *   *   If a majority of the votes cast of the duly qualified electors residing within the corporate limits of the City of Reno as shown by the last preceding official registration are in the affirmative, the city council may borrow the money or issue the proposed bonds in such denominations or sums that they may deem proper and sell the same." * * *

Under relator's interpretation the statute would read thus: " If a majority of the votes of duly qualified electors   *   *   * are in the affirmative,   *   *   *   the city council may borrow the money."   *   *   *   It will be observed that this interpretation ignores the word " cast " in the statute. The object of the interpretation of statutes is to ascertain and enforce the intention of the legislature.

" No sentence, clause, or word should be construed as unmeaning and surplusage if a construction can be found legitimately which will give force and preserve all the words of the statute." " It is a canon of construction that, if it be possible, effect must be given to every word of an act of parliament."   *   *   *   (Black on Int. of Laws, 83.)

It is a matter of common experience that special elections submitting issues to be voted for by the electors of a town or city do not bring out a full vote. In the present case the vote did not reach forty-two per cent of the registered votes at the general election of 1896. It may be that the legislature, aided by the experience of similar elections, intended that this election should be determined by a majority of the votes cast, and not by a majority of all the electors of the City of Reno. Whether this was the reason or not for the use of the word " cast " in the sentence, the fact remains that it is superfluous under any other view. Under the rule that no word should be rejected as superfluous if it can be avoided, we conclude that a majority of the votes cast, and not a majority of the votes of the electors of the City of Reno as

shown by the official registration of 1896, could rightfully determine the questions presented.

It is objected that the provisions of section 12 of the act providing that the trial in all cases for the infraction of city ordinances of a police nature shall be summary in character before the police judge, without a jury, are in violation of the provisions of the constitution, which declare that the right of trial by jury shall be secured to all and remain inviolate forever. This constitutional provision has not been considered as extending the right of jury trial, but as confirming and securing it as it was understood at common law.

A jury cannot be claimed as of right in an equity case, or upon an issue of law, for that is a matter purely for the court. Sedgwick says that " extensive and summary police powers are constantly exercised in all of the states of the Union for the repression of breaches of the peace and petty offenses; and these statutes are not supposed to conflict with the constitutional provisions securing to the citizens a trial by jury." * * * (Sedg. St. & Const. Law, p. 497.) See, also, Dillon on Mun. Corp. sec. 432; *McGear* v. *Woodriff,* 33 N. J. L. 217; *Johnson* v. *Barkley,* 1 Har. 1; *Byers* v. *Commonwealth,* 42 Penn. St. 89.

It is claimed that section 3 of the act, which provides that the members of the city council shall be owners of real estate in the city as a qualification of membership, is in violation of the constitution. We do not understand which particular provision of the constitution is relied upon, but we may say generally that there is nothing in the constitution upon the subject of the property qualifications of councilmen or other officers. The legislature, not being restricted, had the power to impose the qualification, and the provision, being reasonable and intended as a safeguard to the owners of property, should be enforced. (Mechem on Pub. Officers, sec. 81.)

It is also objected that section 34 of the act which provides that the city may borrow not to exceed $150,000, for the purpose of procuring water and the erection of water works, is unconstitutional as being contrary to section 8 of article VIII, which provides that the legislature shall provide for the organization of cities and towns by general laws and

restrict the powers of taxation, assessment, borrowing money, contracting debts, and loaning their credit, except for procuring supplies of water. The fact appears to have been overlooked that the City of Reno was incorporated under a special law enacted in conformity with section 1 of article I, which authorizes the creation of municipal corporations by special enactment.

Objection is made that section 2 of the act divides the city into five wards, and it is claimed that such division ignores the provision of the constitution, which requires that representation shall be apportioned according to population (Art. I, sec. 13).

Waiving the question whether the provision is applicable to municipalities, it is sufficient answer to say that it is impracticable to apportion representation by any other method than by geographical lines, and it will be presumed that the lines have been fixed in conformity with the requirements of the constitution in the absence of a showing to the contrary.

The objections that the statute names therein the first members of the city council; that it constitutes county officers ex officio city officers; that it diverts fines from the school fund; that it is a special law, are all answered adversely to relator's contention in *State* v. *Rosenstock*, 11 Nev. 128.

A judgment will be entered dismissing the information and taxing the costs to relator.