D. M. BUCKINGHAM, Petitioner, *v.* THE FIFTH JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, in and for the County of Mineral, and the HONORABLE WM. D. HATTON, the Presiding Judge Thereof, Respondents.

No. 3302

May 14, 1940. 102 P. (2d) 632.

*Thatcher & Woodburn,* for Petitioner.

*Martin G. Evansen,* District Attorney, for Respondents.

## OPINION

By the Court, ORR, J.:

This is an application for a writ of prohibition.

D. M. Buckingham is the duly elected and acting

county clerk and ex officio treasurer of the county of Mineral, State of Nevada. On the 7th day of October 1939 the State of Nevada, on the relation of Farrell Seevers, as complainant, filed in the district court of the Fifth judicial district of the State of Nevada, in and for the county of Mineral, a certain amended complaint, the pertinent portions of which are as follows:

"1. That Defendant did, while acting as such County Clerk and County Treasurer of Mineral County, on or about the 9th day of May, 1939, have in his possession public moneys belonging to the County of Mineral;

"2. That a check described as follows '11–84 Day & Night Branch 11–84 Bank of America National Trust & Savings Association No1014056 San Francisco, California, May 8 1939 19 Pay to the Order of Treasurer, Mineral County $150.00 Exactly $150–00 cts dollars Cashier's Check A. G. Volz Asst. Cashier-Manager' was received on or about the 9th day of May, 1939 by D. M. Buckingham while acting in the capacity of County Clerk and Treasurer of Mineral County;

"3. That said above described check was received by said D. M. Buckingham for the purpose of paying to the County of Mineral said money in return for certain road work;

"4. That said check was endorsed by said D. M. Buckingham 'For deposit only Pay to the order of First National Bank in Reno 94–2 Reno, Nevada 94–2 D. M. Buckingham Treas. Mineral County';

"5. That said above described check was deposited in the First National Bank of Nevada in Reno, Nevada to the credit of D. M. Buckingham, Treasurer of Mineral County;

"6. That said D. M. Buckingham acting as County Treasurer of Mineral County failed and neglected to make any accounting of said moneys in the books of Mineral County provided for that purpose and within the period prescribed by law;

"7. That the cash and cash items in the Treasurer's office and funds in the depository bank on the 7th day

of September, 1939, amounted to a sum only of $11.66 in excess of the amounts shown by the books of Mineral County as chargeable to said Treasurer and did not show any other amount of overage that could be designated as being any part of the above $150.00;

"8. That said D. M. Buckingham acting as Treasurer of Mineral County failed and neglected to issue a receipt in triplicate for all moneys received by him during the month of May, 1939 and failed and neglected to immediately file the duplicate with the County Auditor of Mineral County, and failed and neglected to submit to the Board of County Commissioners at its first regular meeting in May, 1939, and every regular meeting by said board thereafter, to the date of the filing of the original ¡Complaint herein, a statement containing a complete record of the source and amount of all receipts, payments from, and balances in all funds, all of which is contrary to the statute so made and provided." .

The amended complaint seeks the removal of said Buckingham from the office of clerk and treasurer of Mineral County, Nevada.

On the 13th of October 1939 the said district court issued a citation requiring the said Buckingham to appear before the said court and the judge thereof to show cause why judgment should not be given and entered as prayed in the amended complaint. Thereafter said Buckingham filed a demurrer to the amended complaint, alleging that the said amended complaint failed to state facts sufficient to constitute a cause of action against said Buckingham, and asking that said proceeding be dismissed. The said demurrer was overruled, and the hearing of the removal proceeding set for January 29, 1940. .

On the 18th day of January 1940 said Buckingham filed herein a petition for a writ of prohibition restraining the said district court and the Honorable Wm. D. Hatton, judge thereof, from taking any further proceedings in said cause. On the same date the said petition was filed, an alternative writ of prohibition was

issued by this court, wherein the respondents were ordered to show cause why a peremptory writ should not issue. Respondents have filed herein a demurrer to the petition, alleging that it is insufficient to entitle the petitioner, D. M. Buckingham to a writ of prohibition. An answer has also been filed, which admits all of the allegations of the petition except the allegations in paragraphs VI and VII thereof. Said answer raises only questions of law.

██ Respondents first contend that a writ of prohibition is not a proper remedy for petitioner herein to invoke, and assert that a writ of prohibition will not issue to determine whether or not the complaint states a cause of action, because the sections of the Nevada statute under which this proceeding is brought provide for an appeal, and that the petitioner has a plain, speedy and adequate remedy at law. In support of this contention of respondents many cases are cited, and, of course, the general rule is that ordinarily trial courts will not be required to pause in the hearing of matters under consideration while determination is made by appeal as to the correctness of intermediate orders. However, in a proceeding such as we now have before us, the propriety of such a writ has been sanctioned in the case of Bell v. District Court, 28 Nev. 280, 81 P. 875, 1 L. R. A. (N. S.) 843, 113 Am. St. Rep. 854, 6 Ann. Cas. 982. Respondents attempt to distinguish this case upon the ground that in the Bell case the unconstitutionality of the statute in question was apparent, and that no such condition exists here. The finding of this court as to the unconstitutionality of the statute in the Bell case was arrived at after a hearing. The hearing was granted to afford opportunity to arrive at a finding. The underlying purpose was to prevent possible injustice. It is recognized that courts, on occasion, fall into error in ruling on questions of law. When no occasion exists whereby injustice might result, the correctness of the ruling is tested by an appeal from a final judgment, and not from intermediate orders, thus avoiding

delays and other clogging of the judicial machinery. But, as in the instant case, to await the final judgment before testing the correctness of the ruling on demurrer could (in the event the judgment was one of removal) result in irreparable damage to petitioner, in humiliation suffered, the loss of the respect and confidence of constituents, to say nothing of loss of salary and surrender of the office to another. These results are experienced even though the judgment be reversd. In viewing probable results we are not anticipating the judgment— merely recognizing existing opportunity for an injustice to result from unintentional error. Such is the reasoning that permeates the Bell case, supra, as we read it, and the holding therein settles the question adversely to respondents' contention. A final determination as to whether the complaint states a cause of action for removal is just as important on this hearing as was the determination of the constitutionality of the statute in the Bell case, and the propriety of prohibition proceedings rests upon the same principles in both.

■ Petitioner has advanced certain arguments relative to the unconstitutionality of the statute involved, but the contention is based solely upon the idea that the unconstitutionality would only appear if it be urged that malpractice as used in the statute means something different than malfeasance, appearing in article VII, section 4 of the Constitution of Nevada. Respondents concede that "malpractice" as used in the statute means no more and is not different from the word "malfeasance." So we need pursue that inquiry no farther, and shall consider the questions presented, with the understanding that the use of the word "malpractice" comprehends "malfeasance" as used in the constitution and statute.

Does the amended complaint charge an act of malfeasance in office? The sections of the statute involved are sections 4860 and 4861 N. C. L. Section 4860 prescribes the instances under which the statute can be

invoked against a public official, and section 4861 prescribes the procedure therefor. Section 4860 enumerates four instances in which the statute is operative:

(1) Where such public official has refused to perform an official act in the manner and form as now prescribed by law;

(2) Where such official has neglected to perform an official act in the manner and form as now prescribed by law;

(3) Where such official has been guilty of malpractice in office.

(4) Where such official has been guilty of malfeasance in office.

Petitioner contends that the amended complaint is insufficient to charge malfeasance in office because the complaint is limited to acts of omission rather than commission; that it is further insufficient in failing to allege knowledge or corrupt intent on the part of petitioner; and, further, that the amended complaint is insufficient to sustain the charge of neglect of duty in the contemplation of the statute, because: (a) It alleges no omission of acts required by law at the date of the enactment of the removal statute; (b) it alleges no extreme or extraordinary conduct on the part of petitioner which would call for the invoking of the provisions of the statute; (c) petitioner could not be removed from the office of county clerk for alleged acts of omission in his capacity as ex officio treasurer.

 The amended complaint, without question, alleges acts of omission rather than commission. Subdivision 6 of paragraph I alleges that the petitioner failed and neglected to make an entry in the books of the county of a certain item. In subdivision 8 of the same paragraph it is alleged that petitioner failed and neglected to issue a receipt in triplicate for all moneys received by him during the month of May 1939, and that he failed and neglected to immediately file a duplicate with the county auditor of Mineral County; that

he failed and neglected to submit to the board of county commissioners at its first regular meeting in May 1939 and every regular meeting of the said board thereafter to the date of the filing of the original complaint, a statement containing a complete record of the source and amounts of all receipts, payments from and balances in all funds.

The foregoing are acts of omission. Omissions to act are not acts of malfeasance in office, but constitute nonfeasance. A distinct difference is recognized between the two. Conduct invoking one charge will not be sufficient to justify the other. Cases pointing out this distinction are: State ex rel. Hessler v. District Court, 64 Mont. 296, 209 P. 1052; State v. Beazley, 77 Mont. 430, 250 P. 1114; State v. McRoberts, 207 Ind. 293, 192 N. E. 428; State ex rel. Hardie v. Coleman, 115 Fla. 119, 155 So. 129, 92 A. L. R. 989; Holliday v. Fields, 210 Ky. 179, 275 S. W. 642.

We have examined the cases cited by respondents, wherein certain acts of omission have been classed as malpractice; they are not persuasive in view of the wording of our statute; it is plain that the legislature intended that acts of omission were to be dealt with under that portion of the statute which reads: *"who shall refuse or neglect to perform any official act in the manner and form as now prescribed by law,"* and that acts of commission were to fall under the remaining provision: *"or who shall be guilty of any malpractice or malfeasance in office."*

■ Respondents insist that subdivision 7 of paragraph I charges malfeasance. That allegation does not charge a wrongful act on the part of petitioner. The check was regularly deposited to the credit of the county. It cannot be said the allegation is sufficient to sustain a charge of embezzlement or abstraction of funds. The difference between the books and the cash counted could have been occasioned by many different causes of an innocent nature. The wrongful act must be made to appear

by the description employed, and the mere use of the words "malpractice" and "malfeasance" will not suffice.

■■ We find substance in the contention of petitioner that the acts of omission charged against him do not come within the provisions of section 4860 N. C. L. for the reason that the acts which it alleged were omitted were not required of a county treasurer at the time of the enactment of the said section 4860. It will be noted that the provision of the statute confines its operation to "neglect or refusal of any official to perform any official act in the manner and form as now provided by law." Section 4860 was enacted in the year 1909. The requirement, if any, for the petitioner to enter the $150 check in the books of the county and issue a receipt in triplicate and to make a report to the county commissioners is found in sections 2067 to 2070 N. C. L., which said sections were enacted in 1919, long subsequent to the enactment of section 4860. So, if the provision in said section 4860, namely, "now prescribed by law," means exactly what it says, then it follows that the omissions to act charged against petitioner do not constitute grounds for removal. The words "now prescribed by law" have a definite, ascertainable meaning, which is: laws enacted and in force and effect at the time section 4860 was placed on the statute books. See Petition of Easby, 124 Pa. Super, 578, 189 A. 548; 46 C. J. 632; Gibbs v. Barkley, Tex. Com. App., 242 S. W. 462, at page 465.

We cannot reject the word "now" as used in the statute as surplusage, because of a well-known rule of statutory construction that each and every word of a statute must be given its meaning. This rule was recognized in the case of State v. Ruhe, 24 Nev. 251, at page 261, 52 P. 274. See, also, Torreyson v. Board of Examiners, 7 Nev. 19.

Respondents argue that while section 4860 uses the word "now," section 4861 omits it, and for that reason the charge may be sustained by ignoring section 4860

and basing it solely upon section 4861. Section 4860 provides the ground for removal, and section 4861 provides the means for carrying the same into effect. The two sections must be read together. Section 4860 is the substantive law fixing the grounds for removal, and section 4861 provides the procedure for carrying the preceding section into effect.

Petitioner calls attention to the fact that the contention of respondents that certain acts were required of the treasurer by the laws of 1912 is without merit, because the sections referred to have long since been repealed. The position of petitioner in this respect is sound, and no further comment is required relative thereto.

We think that a determination of two other points raised by petitioner, namely, that the county commissioners are not authorized to perform road work for pay, and hence there was no fund to which the $150 could have been legally apportioned, and, secondly, that the removal of the treasurer would not cause a vacancy in the office of county clerk, by reason of the fact that the county clerk is ex officio treasurer, need not be made here. However, we recognize them as presenting propositions of importance.

Our conclusion is that the amended complaint fails to charge any act of malfeasance, and, further, that it fails to charge any neglect of duty on the part of petitioner, required by any law in existence at the time of the enactment of section 4860, and for those reasons the district court is without jurisdiction to proceed with the hearing of said matter, and the writ is made permanent.