THE STATE, EX REL. JOHN BUMSTED, RELATOR, v. ARCHIBALD M. HENRY.

---

THE STATE, EX REL. GEORGE W. DECKER, RELATOR, v. PHILIP J. DAUDT.

Argued at June Term, 1906—Decided August 11, 1906.

Section 5 of the act of 1906 (*Pamph. L., p.* 199) provides that in all instances where excise commissioners are now by law appointed by the mayor or other governing body of any municipality, such commissioners shall be appointed by the Court of Common Pleas in the county in which such municipality is located. *Held,* that the legislation is unconstitutional because special and regulative

of the internal affairs of cities. It is special because it selects for classification only such excise commissioners as were then appointed, without including those who were elective. It is further special in narrowing the class of appointive functionaries to such as are now appointed, regardless of the possible coming into existence of similar appointive officers in the future.

---

These are two informations in the nature of writs of *quo warranto* instituted by two members of the excise board of Jersey City, appointed as such by the mayor of said city, under the provisions of *Pamph. L.* 1903, *p.* 369. The writs are sued out against the defendants, who were appointed by the Court of Common Pleas of Hudson county to succeed the relators as excise commissioners, the appointments being made by the Court of Common Pleas of Hudson county under color of the provisions of the last section of the act of 1906. *Pamph. L., p.* 199.

Demurrers have been filed to the informations and issues joined thereon.

Before Justices FORT, REED and TRENCHARD.

For the relators, *J. Merritt Lane.*

For the defendant Archibald M. Henry, *John W. Queen.*

For the defendant Philip J. Daudt, *Howard R. Cruse.*

The opinion of the court was delivered by

REED, J. The right of the defendants to hold the positions of excise commissioners is challenged upon this single ground, namely, that the fifth section of the act of 1906, *supra,* under the claimed authority of which section the appointment of the defendants was made by the Court of Common Pleas of Hudson county, is unconstitutional legislation. The section the validity of which is thus put in question reads as follows:

"5. Hereafter, in all instances where excise commissioners are now by law appointed by the mayor or governing body of any municipality in this state, such commissioners shall be

appointed by the Court of Common Pleas of the county in which such municipality is located, and the term of office of all such excise commissioners now holding office shall cease and terminate at the expiration of twenty days after this act takes effect, and the appointment first made under this act shall be to fill the unexpired term of such excise commissioners."

The vices which it is alleged infects this legislation are— *first,* that the title of the act does not state the object sought to be attained by this section; *second,* that there is in the section an unconstitutional delegation of power to the Court of Common Pleas; *third,* that the act is special legislation, regulating the internal affairs of municipalities.

In respect to the first ground of attack it appears that the act of which the fifth is the concluding section is a supplement to an act entitled "An act to regulate the sale of spirituous, vinous, malt and brewed liquors, and to repeal an act entitled 'An act to regulate the sale of intoxicating and brewed liquors,' passed March 7th, 1888." This is the title of the original act, approved March 20th, 1889, of which the act in question is a supplement. *Pamph. L., p.* 77.

It is not contended that the title of the original act of 1889 was not sufficiently broad and definite to support legislation defining the manner in which licenses to sell liquors should be granted, or to support legislation erecting or changing the constitution of any body to whose judgment or discretion the granting of licenses should be committed.

The point made is that inasmuch as the original act did not create or name any licensing body, but left intact such licensing bodies as already existed under other legislation, therefore, this supplemental legislation should have confined itself to subjects dealt with in the original act. It is insisted that, in so far as this supplement assumes to legislate concerning new subjects, the original title is misleading.

It is hardly necessary to observe that the very purpose of a supplement is to perfect the original statute by amendments limiting, enlarging or changing the provisions of the amended act. If the introduction of some new feature is

deemed likely to improve the efficiency of the general scheme indicated by the title, it seems impossible to point out why it may not be introduced into one of any number of supplements. The single question is not whether the act in which it appears purports to be a supplement to some other act, but the query is whether the new matter introduced is within the purpose stated in the title to the original act.

We think the purpose of section 5 is sufficiently expressed in the title to the act of 1889.

The second ground upon which the unconstitutionality of the fifth section is rested, namely, that the section provided for a delegation of power for the appointment of excise commissioners to a county judge, was not pressed with much vigor upon the argument. Indeed there seems left nothing to say in view of the recent decisions, first, that of the Court of Errors and Appeals in *Ross* v. *Freeholders of Essex,* 40 *Vroom* 291, followed by the decision in this court in *Schwarz* v. *Dover,* 41 *Id.* 502. There is no substance in this point.

The third ground of attack is that section 5 is based upon an imperfect classification of cities, and therefore is special legislation. The insistence is that the classification is illusory in two particulars. The first particular is that the power conferred upon the Court of Common Pleas is confined to the appointment of those members of the board of excise commissioners who were by law appointed by the mayor or governing body of the municipality. The second particular is that the class is further circumscribed by the provision that the court, in making the appointments, should be confined to such excise commissioners as, in the language of the section, are *now* appointed by the mayor or governing body of any municipality.

It is to be observed that the power conferred upon the Court of Common Pleas is not restricted to any statutory class or classes of cities. There is no specialization of municipalities of any kind by the standard of population. The section, however, segregates the municipalities into two classes by another standard, namely, into a class consisting of municipalities having excise commissioners appointed, and into a class in-

cluding cities having excise commissioners not appointed by the mayor or governing body of the municipality.

There appears to be much contrariety in the different municipalities respecting the constitution of the bodies invested with licensing power. In some municipalities the common council exercises the licensing power; in others, the Court of Common Pleas of the county in which the municipality is situated; in others, it is confided to excise boards whose members are elected or appointed by the mayor and common council, and perhaps in others still by excise boards whose members are appointed by a Court of Common Pleas.

The point to be kept in mind is merely that there are several municipalities in the state whose commissioners are elected, and the question propounded by the situation is, What can be said to distinguish, in view of the purpose of this legislation, cities having elective excise boards from cities having appointed excise boards? Reasons based upon population may be imagined for supporting a distinction in the manner in which members of boards of excise should be elected or appointed. But why, in cities of the same population and existing under exactly the same conditions, a board in one should be elective and in another should be appointive seems to be a question which admits of no satisfactory answer.

The principle respecting the standard of classification essential to confer generality upon statutes of this kind was very early announced by Chief Justice Beasley, in the case of *Fitzgerald* v. *New Brunswick,* 19 *Vroom* 451, 487. Speaking for the Court of Errors and Appeals, he used this language: "It is plain that as these departments of police are common to all cities, any law that affects or regulates them must, by force of our legal system, be a general one. A particular legislative plan prescribing the official terms of such functionaries or the mode of their supersedure, whether such results be affected by the modification of existing regulations or by the introduction of new ones applicable to certain cities only, would be clearly illegitimate." Although in that case another clause in the legislation was held to be general, yet the accuracy of this language of Chief Justice Beasley, in re-

spect to the clause of which he was then speaking, has never been questioned. In that case the vice of the legislation thus criticised was that it was confined to cities having a police force holding by a certain tenure. The vice in the present case is that the appointive power is confined to cities having excise commissioners selected in a certain way. In the former case the further vice of the legislation was that the mode by which officers were superseded applied to one class of officers alone. The vice in this case is that the manner in which officers are appointed does not include the whole class of officers.

Since the decision of that case the decisions illustrative of defective classifications have been too numerous to cite.

In *Loucks* v. *Bradshaw, 27 Vroom* 1, there came before the Supreme Court for review an "Act to create county boards of excise commissioners, and to define their powers and duties." The body of the statute, however, restricted the control of the board to counties where licenses were not granted by the court. It was held that this act was unconstitutional because the distinction between those counties in which licenses were granted by a court and those in which licenses proceeded from some other authority was a purely arbitrary distinction and not a proper basis for legislation.

In *Johnson* v. *Hoover, 29 Vroom* 334, the legislation attempted to divide boroughs into two classes, in one class of which were boroughs having power to grant licenses, and in the other class those boroughs having no power to grant licenses. The attempt was to confer upon citizens of the first class the right to apply either to common council or the Court of Common Pleas, while the citizens of the second class were compelled to apply only to the Court of Common Pleas. The legislation was held to be special.

Along the same line are the cases of *Tiger* v. *Morris Pleas, 13 Vroom* 631; *Closson* v. *Trenton, 19 Id.* 438; *S. C., on appeal, 20 Id.* 482; *Long Branch* v. *Sloan, Id.* 356; *Bray* v. *Hudson, 21 Id.* 82.

I will not stop to analyze the facts upon which these cases were decided, but will content myself with a more particular

reference to the case of *Parker* v. *Newark, 28 Vroom* 83. The situation presented by the facts in that case renders the judgment delivered therein a distinct precedent controlling under the conditions now presented. It appeared in that case that a statute had provided that in any city of the first class, the charter of which provided for a special election to fill a vacancy in the office of alderman, it should not be necessary to hold such special election, but that the mayor should appoint a resident voter to occupy the office. The act was held to be constitutional, so far as it was confined to cities of the first class, but it was held to be unconstitutional because it did not embrace all cities of the first class. The defect in the classification was that it only applied to those cities which had a charter providing for special elections to fill the vacancy of alderman. Justice Dixon remarked: "We are unable to see how the fact that heretofore various modes of filling vacancies in the governing bodies of municipalities have existed can reasonably be a ground for discriminations among them when the legislature is proceeding to perform its constitutional duty of prescribing a general rule for the filling of such vacancies. It seems indisputable that a rule proper for one must be proper for another, irrespective of previous methods. Mere difference in local administration under differing laws cannot form a basis for the classification of municipalities which will, in a constitutional sense, be general. If they could, plainly all the evils at which the amendment of the constitution on this subject was aimed might be perpetuated in new legislation."

As in that case the power of the mayor to appoint was limited to vacancies which had theretofore been filled in a particular way, so in the present case the power to appoint is limited to officials theretofore appointed in a particular way, all other appointments being left to be filled as before.

It is urged on behalf of the defendants that the effect of the section is a tendency to produce uniformity in that it makes all appointive boards appointive by one body. But, admitting this, it in no way decides the question of adequate classification, for the act may in a degree make towards uni-

formity and yet not accomplish constitutional uniformity because it fails to bring within its operation certain objects which belong to the class. This is the fault of the present legislation.

In the cited case of *Bumsted v. Govern,* 18 *Vroom* 368, the legislation tended not merely towards uniformity, but it reached all of the class, and although its immediate effect was confined to one county, it included all the counties in the state. The conclusion seems inevitable that section 5 *sub judice* does not include all the boards of a class, and must therefore be held to be special legislation.

But it is to be further observed that the class selected is not even extended to all boards whose members are appointed, but includes only those boards whose members are *now* appointed by the mayor or governing body of a municipality. There is a line of familiar cases holding that generality requires that the class selected shall include not only all existing objects belonging to the class, but all objects that may thereafter become members of the class. Legislation based upon population, and including only cities *now* having a certain population, is vicious, because other cities may acquire the same standard of size. Legislation becomes obnoxious to this criticism quite frequently by the use of the word "now" as descriptive of the status of a class.

Thus specimens of legislation confined to cities where a board of assessment and revision now exists (*Richards v. Hammer,* 13 *Vroom* 435), or confined to honorably discharged soldiers now in office (*Pierson v. O'Connor,* 25 *Id.* 36), or confined to cities in which there are now by law three members of common council, &c. (*Bennett v. Trenton,* 26 *Id.* 72), or confined in its operation to any person now occupying oyster grounds (*State v. Post, Id.* 264), have all been adjudged unconstitutional because they did not include objects which might thereafter become members of the class.

Now, it appears that there are in the state several general acts, by the adoption of the provisions of one of which different municipalities may acquire the right to excise commissioners differently appointed. All cities, except those of the

first class, can by an ordinance adopt the provisions of the act of 1901 (*Pamph. L., p.* 239), under which a Court of Common Pleas appoints commissioners. So any city can by ordinance adopt the provisions of the act of 1902 (*Pamph. L., p.* 628), by which the members of the excise boards are elected. The ordinances in both instances are repealable. So it seems that any municipality of over twenty thousand inhabitants may by popular election adopt the general charter scheme contained in the act of 1899 (*Pamph. L., p.* 283), in which the excise commissioners are appointed by the mayor and common council.

So it would seem not improbable that a municipality having an elective board now may, without further legislation, become possessed of an appointive board of excise.

But, again, a city of the second class, like Trenton, having now an elective board, may grow into a city of the first class.

The section of the act of 1906 under consideration, as already remarked, does not classify cities by population, but only by the method in which their members of excise are appointed. It applies to the two cities of the first class, not because they are in that class, but because they have excise commissioners now appointed in the mentioned manner. If any city now existing, in which appointments are not now made, shall hereafter grow into the first class, it would be unaffected apparently by the fifth section now in question, but would come under the control of the act of 1903. *Pamph. L., p.* 369. Such city would thus assume a shape in which it would have an excise board appointed by the mayor alongside of a city of the same class having excise boards appointed by the Court of Common Pleas.

But regardless of the effect of the use of the word "now," the classification seems so clearly defective that I am constrained to the conclusion that the legislation relied upon by the defendants in support of their respective appointments is unconstitutional. A judgment of ouster should go in each case.