THE STATE, EX REL. JOHN H. SHERIDAN, RELATOR, v. GEORGE LANKERING.

Argued February 23, 1912—Decided June 5, 1912.

The act of 1911 (*Pamph. L., p.* 512), which excludes from its operation "those cities where boards of education *now* consist of less than nine members each," is unconstitutional.

On *quo warranto.*

Before Justices BERGEN, VOORHEES and KALISCH.

For the relator, *Merritt Lane.*

For the defendant, *John Fallon.*

The opinion of the court was delivered by

BERGEN, J. The information was filed by the relator in this cause to inquire by what authority the defendant exercises the office of president of the board of education of the city of Hoboken, and it sets out that there was, until January 1st, 1912, a board of education in that city composed of eight members, of which one Wilson Taylor was the president; that the term of office of said Taylor as a member of said board has not ex-

pired, and that no successor to said Taylor as president has yet been elected by the members of the board of which he is a member, and it then charges that the defendant has, since February 1st, 1912, usurped, intruded into and unlawfully held, used and exercised, and yet doth usurp, intrude upon and unlawfully use, hold and exercise, to the exclusion of the said Wilson Taylor, the said office. To this information the defendant pleads that he was elected by the members of a board of education appointed under the provisions of an act of the legislature of this state, approved April 27th, 1911 (*Pamph. L., p.* 512), which he claims amends section 38 of an act entitled "An act to establish a thorough and efficient system of free public schools, and to provide for the maintenance, support and management thereof," approved October, 1903. *Pamph. L.* 1904, *p.* 1. To this plea a demurrer was interposed specifying two grounds—(*a*) that the act of 1911 under which the defendant justifies does not apply to the city of Hoboken; (*b*) that the statute is special legislation regulating the internal affairs of towns and counties, and also providing for the management and support of free public schools, which is forbidden by section 7, paragraph 2 of the constitution of the state. As the second specification is, in our opinion, sufficient to dispose of this cause in favor of the demurrant, the first need not be dealt with. Section 38 of the original act of 1903, provided for the appointment of boards of education by the mayor or other chief executive of each city, to consist of nine persons, and section 39 provided in the alternative for the election of a similar board, the act requiring that the voters of each municipality have submitted to them the question of the acceptance of either plan, and that until acceptance of either by any city the administration of school matters should remain in, and be exercised by, any board of education theretofore having the management and control of the public schools therein. It does not appear that Hoboken accepted either of the alternative plans, and it is not claimed that it did, but, on the contrary, continued the appointment of its board under the act of 1892. *Pamph. L., p.* 82. Such a board was in existence January 1st, 1912, when

the terms of office of four of its members expired, leaving the relator and three of his associates, one of whom is Wilson Taylor, its president, still in office. The mayor of the city refused to appoint members to fill the places of those whose terms had expired, as required by the act of 1892, but claiming to act under the amendment of 1911, undertook to create a new board by appointing nine persons, of whom the defendant was one, and the new members assuming to constitute the entire board and ignoring those whose terms had not expired, met and organized by electing the defendant as president of the board of education of Hoboken. The obvious intent of the amending act was the elimination of the popular vote on the question of acceptance or rejection of sections 38 and 39, and the imposition of the new method of selection upon all cities other than those excepted from the provisions of the act. The act of 1911 amends section 38 and repeals section 39, which provided for an elective board, section 40, which provided for the manner of submitting the question to a vote, and section 241, which prescribes the method of organization of any board elected under section 39, so, if this legislation be constitutional, it is now the only method existing for the appointment of boards of education in cities not exempted from its operation. That the purpose of the act of 1911 is a special, and not a general, provision for the management of free public schools, or for the regulation of the internal affairs of towns and counties is manifested by the language employed in the opening sentence which is, "in each city other than those cities where boards of education *now* consist of less than nine members each." The class is thus limited to cities having nine members, or perhaps more, in its board of education, but excludes all cities now having a less number, even if such cities should hereafter be entitled to nine or more members. If a city *now* having less than nine members should lawfully increase its board to nine or more members it would not come into the class. That classification by such methods is vicious is too well settled in this state to require the citation of all the cases bearing on this question. If classification by numbers answers the constitutional requirement, all of a present or

future class measuring up to the numerical qualification must be afforded an opportunity to enter the class, for it rests on the qualities of objects, not on the time when they are obtained. *Stahl* v. *Trenton*, 25 *Vroom* 444.

It may well happen that a city, now excluded, may increase the number of its board members, but not being now in the class as limited, there would be no method for the appointment of its members under the amended act, for it has been specifically excluded, and although its board of education might hereafter consist of nine members, their appointment would have to be made under the law at present applicable to that now excluded city, and thus in different cities, having the same number of members of its board of education, diverse methods of appointment may exist for which no reason can be given other than a classification created by the act under review, which is unsubstantial, illusory and contrary to the constitutional prohibition.

The defendant, however, challenges the right of the relator, a private citizen, to question the constitutionality of the act, upon the ground that it is an assault upon the existence of the board of education of the city of Hoboken, a public corporation, and that the existence of the board appointed under the act assailed cannot be lawfully challenged by the relator in these proceedings, because this can only be done by the attorney-general acting *ex officio* where the information undertakes to question the corporate existence of a public corporation, and charges that such is the effect of this information because the court, in order to oust the defendant, would necessarily be obliged to determine that the board which elected him president has no legal existence, thereby permitting a private relator to indirectly attack the corporate existence of a board not a party to these proceedings and without an opportunity to defend its corporate existence. In support of this contention the defendant cites *Holloway* v. *Dickinson*, 40 *Vroom* 72, which holds that an information filed in the name of the attorney-general at the relation of a resident and property owner acting under leave of the court is confined to cases where there exists an office *de facto* or *de jure*, and where the

controversy relates to the right of an individual or individuals to hold such office, but that the act under which such proceedings may be taken does not authorize an attack to be made upon the existence of a public corporation by a private relator, and that such an attack must still be conducted by the attorney-general acting as the representative of the state. The present proceeding does not make any attack upon the existence of a public corporation, but calls upon the defendant to show by what authority he is acting as president of a public corporation, not the legal existence of the office itself. The information does not attack the existence of the board of education, but only the right of the defendant to hold the office.

In *Bumsted* v. *Henry*, 45 *Vroom* 162, two members of the excise board of Jersey City filed information against two members of the board who were appointed by the Court of Common Pleas of the county of Hudson to succeed the relators as excise commissioners, they having been appointed by the mayor, and the question considered and determined was the constitutionality of the act under which the defendants had been appointed. The Supreme Court holding that the act was unconstitutional, ordered a judgment of ouster. from which a writ of error was taken to the Court of Errors and Appeals, and in that court (*Id.* 790), Mr. Justice Swayze, speaking for the court, said: "The information does not attack the existence of the board of excise commissioners: it concedes that and attacks only the right of the defendant to hold the office." So, here, the information concedes that a board of education exists in Hoboken, and that it is entitled to elect a president, but attacks the right of the defendant to hold the office because Mr. Taylor, who claims to be president of the board, has been ousted by the defendant. claiming to hold under an act which we consider unconstitutional.

In *Honn* v. *Bedell*, 38 *Vroom* 148, approved by the Court of Errors and Appeals in the case last above cited, the relator, who was a citizen of the city of Camden, filed his information to test the right to office of a board of excise commissioners, the defendant in the proceeding having been elected under an act providing therefor (*Pamph. L.* 1884, *p.* 133), while by

a supplement to that statute approved in 1892 (*Pamph. L., p. 29*), it was provided that the members of such a board should be appointed by the Court of Common Pleas. The respondents objected to the proceedings, claiming that the right of the respondents to hold their offices could not be called in question at the instance of a private person, because it attacked the legal existence of the board of which they were members. The court held, in an opinion written by Chief Justice Gummere, that the defendants misapprehended the effect of the procedure because the legality of the board of excise commission was not questioned, but the right of the incumbents to sit in that board as its members.

In the present proceeding the question raised is whether the defendant is the legal president of the board of education of the city of Hoboken and his right to that office depends upon whether the body who have undertaken to elect him to that position have been properly selected, so as to become entitled to induct him into the office of president. The General School act, previous to the amendment of 1911, provides for a board of education in every city, and it also provides for the method of the selection of its members. The act of 1911, which is challenged, provides for a different method of selecting the officers to serve as members of the board of education and fixes the number. It is the method of selection, and not the corporate existence of the board of education which this information assails, and if the relator is correct in his position, it does not destroy the office, but determines that the defendant has been unlawfully selected.

We are of opinion that the act of 1911 (*Pamph. L., p. 512*) is not a constitutional enactment, and affords no support to defendant's claim to the office he now asserts to hold by virtue thereof.

The relator is entitled to judgment on his demurrer to defendant's plea.