Schwarzwalder v. Tegen.

---

CATHERINE SCHWARZWALDER

*v.*

FREDERICK TEGEN, JR., et al.

[Filed June 8th, 1899.]

1. Act of April 9th, 1888 (*P. L. of 1888 p. 414*), declares that any of the mutual insurance companies already chartered by the legislature or already organized under general laws, may, after giving ninety days' notice in three public papers, change to joint stock companies, by proceeding in accordance with, and conforming their charters to, its provisions. Act of 1899 (*P. L. of 1899 pp. 17, 18*) is the same as act of 1888, with the omission of the word "already."—*Held*, that the word "already" found in act of 1888, read in connection with act of 1899, relates only to the date of the application for change, and a mutual fire insurance company organized after the passage of act of 1888, and prior to act of 1899, may change from a mutual to a joint stock company.

2. Act of April 9th, 1888, authorizing mutual insurance companies to change from mutual to joint stock companies, fails to give direction as to the method of effecting the change. The change can be made only by corporate action taken at a meeting of the corporation, after special notice of the intended action has been given to the members.

3. A provision in a policy of fire insurance issued by a mutual insurance company allowing the cancellation of the policy at any time by the holder without previous notice, and by the company upon giving five days' previous

notice, without assigning any reason, does not render the right of the holder of such an uncertain and precarious nature as to disentitle him to an injunction against a change of the company, as the right of such policyholder is not the mere pecuniary right of a policyholder, but also that of a stockholder in the company.

On application for preliminary injunction. Heard on bill and affidavits and answering affidavits and stipulation.

*Mr. Samuel F. Leber* and *Mr. Thomas S. Anderson*,.for the complainant.

*Mr. Joseph A. Beecher*, for the defendants.

EMERY, V. C.

The complainant is the holder of a policy of insurance in the German Mutual Fire Insurance Company of Newark, N. J., a corporation organized on April 27th, 1893, as a mutual fire insurance company under the general laws of this state, and files this bill against the defendant company and its individual directors, to enjoin them from changing the company from a mutual to a joint stock company. The General Insurance law requires companies organizing under it to designate in their certificate whether they propose to organize a mutual fire insurance company or a stock insurance company. There is also a provision (section 39) in the General Insurance laws which were in force at the time of the incorporation of the defendant company that mutual companies might unite a cash capital to any extent as an additional security to the members over and above their premium and stock insurance, and that the company might allow interest on such capital and a participation in its profits, and prescribe the liability of the owner or owners thereof to share the losses of the company. The defendant company, under this section,.has provided for a cash capital of $48,000, and it has accumulated a surplus, which in the bill is charged to be $20,000, and in the answering affidavits is admitted to be $6,000. Where persons become members of a mutual insurance company by reason of holding the policies, it has been

Schwarzwalder *v.* Tegen.

usual, if not general, for such members to give premium notes which are assessable to pay the losses of members and the expenses of management, and the General Insurance law seems to contemplate this method of fixing the liability of the members of a mutual company who became such by reason of taking out policies. There is, however, no express provision against the issuing of a policy to a person as member upon the payment of a premium in cash in lieu of the giving of a premium note, and the charter of the company in this case, as amended in March, 1895, contained a provision—article 5, section 4—under which "any person calling for insurance may elect to pay a cash premium or definite sum in money to be fixed by the directors of the company in lieu of a premium note;" and it was further provided by this section of the charter that

"the liability of the members of the company for losses and expenses incurred during the term of their policies, shall be limited to an amount not exceeding twenty-five per cent. of the amount of the assessment premium written in their policy and in addition thereto."

The complainant in the present case became a member of the company on April 12th, 1898, by receiving a policy for $2,000 and paying a cash premium of $20, and it was also expressed on the face of the policy that there was a liability to the extent of twenty-five per cent. in addition. There is no objection to this method of becoming a member of a mutual insurance company by the payment of a cash premium down instead of the giving of premium notes assessable, and this has been the view of several courts of high authority where the question has been raised. *Mygatt* v. *Insurance Co., 21 N. Y. 52 (1860).* (The New York statutes seem to have been statutes on which our first General Mutual Insurance Company act of 1852 was based.) *Union Insurance Co.* v. *Hoge, 21 How. 35.*

The charter of defendant company further provides, in reference to the rights of those members who are such by reason of the holding of a policy, by article 2, section 1, of its charter, that all persons who shall insure in or with said company shall be deemed and taken for members of said corporation, and

section 2, that every member shall be entitled to cast one vote for every $1,000 and fraction of $1,000 worth of property insured for him with this company, and also to one vote for every $100 invested in cash to the capital stock of said company; provided, always, that every member shall be entitled to at least one vote.

In reference to the distribution of profits between the members of the company who are such by reason of holding policies, and those who are holders of its capital stock, it is provided (By-laws, art. 13). that the board of directors may divide the profits between the capital stockholders and persons insured in the company holding policies of one year's standing, or for a less period, as they shall determine; provided, such dividends shall not be less than $2. There are no other express provisions in the charter or by-laws regulating the respective rights of the policyholder members and the capital stock members. No dividends have yet been declared under this section, nor have the directors established any rule of division between the two classes. The question in the present case arises under a proceeding which has been taken to change the company from a mutual company to a joint stock company purely, and the effect of which will be to terminate the right of the policyholders who are not capital stockholders to have a voice in the management of the company. All of the directors and three-fourths of the cash stockholders have consented to the change, and the proceedings for a change have been commenced on this consent, and without (so far as appears) the consent of any of the policyholders who are not stockholders. The entire number of policies issued is about three thousand, insuring over $2,000,000, but the number and amount of the policies held by stockholders does not appear. The complainant, whose policy is still outstanding, bases her claim to enjoin this change upon several grounds, the two principal ones being—*first*, that this action cannot be taken without her consent, and is one which requires the unanimous consent of the policyholders and stockholders; and *second*, that if it can be effected without such unanimous consent of the members, it can only be effected by the vote of a majority of the members

Schwarzwalder *v.* Tegen.

of the company holding the right to vote under their charter and in attendance at a meeting where notice has been expressly given of the intent to make the change. The authority to make the change from a mutual to a joint stock company is claimed by the defendants under two acts of the legislature, one of which was in existence at the time of the formation of this company, and the other of which has been passed since. The act in existence was an act of April 9th, 1888 (*P. L. of 1888 p. 414*), which provided at the end of the section:

"And any of the mutual insurance companies already chartered by the legislature of this state, or already organized under the general laws of this state, may, after giving 90 days' notice in three of the public papers in this state, change to joint stock companies, by proceeding in accordance with and confirming their charter to the provisions of this act."

This was a supplement to the General Insurance Company act.

By the terms of this law the right to change from a mutual to a joint stock company was given to mutual insurance companies *already* chartered or *already* organized, and the first question which arises is whether, by the use of the word "already," under the act, it was meant to fix the time and description as applying to the date of the passage of the act or to the date when the companies applied to make the change. If "already" is to be construed as equivalent to "now" the act would be confined to companies which were in existence at the date of the passage of the act. After considering the arguments of counsel upon this point, I reach the conclusion that the use of this term "already" is fairly susceptible of two interpretations, one as applying to the date of the passage of the act and the other to the date of the application for change, and inasmuch as the first construction would make the act unconstitutional, I must adopt that construction of the act which would give it legal effect and hold that the act of 1888, in giving to companies "already organized under the general laws" the privilege of changing, meant already organized at the time when the change was desirable to be made. If this be the proper construction of the act, then this right to change having been in existence at the time of the organization of the defend-

ant company, their charter must be considered to have been
made and accepted as incorporating this power to make the
change, and therefore the change might, in my judgment, be
made in any way in which, under the law of 1888, the com-
panies were organized to make the change. The act of 1899,
which was passed subsequent to the organization of the com-
pany, omits this word "already" and reads (*P. L. of 1899 pp.
17, 18*): "Any of the mutual insurance companies chartered
by the legislature of this state or organized under the general
laws of this state may change to joint stock companies," &c.
This amendment was made, it is said, to meet the objection of
the insurance department that there was some question whether
the law of 1888 applied to companies incorporated after its
passage. I think the better view is that the effect of the law
of 1888 is identical with that of the law of 1899, and that the
law of 1889 may be considered as a legislative declaration of
the real intention of the law of 1888. Upon the first question,
then, as to whether the company has the right to make this
change without the consent of all the policyholders, my conclu-
sion is that, inasmuch as, at the time of the organization of the
company, there was in force a law authorizing the change from
a mutual to a joint stock company, the charter, to the knowledge
of every person becoming a member of the company, must be
taken to incorporate in it the right of the company to make this
change. *Meredith* v. *Zinc and Iron Co.*, *10 Dick. Ch. Rep.
211, 218;* affirmed for reasons stated, *11 Dick. Ch. Rep. 454;
Pronik* v. *Spirits Distributing Co.*, *42 Atl. Rep. 586.*

The acts both of 1888 and 1889 leave the method of effecting
this change absolutely without statutory direction, and the com-
pany having the power, the method in which the change is to
be carried out must be settled upon the principles regulating
the rights of corporations and the individual rights of its mem-
bers in proceedings of this character. In the first place, no
special authority being given to the directors or any other
officers of the company to make this change, the change is one
which can be made only by the corporation itself, and it must
be by corporate action taken at a meeting of the corporation.

In the second place, this action at a corporate meeting, whether a regular meeting or a special meeting, being a matter which affects the rights of every individual policyholder as a member, inasmuch as the change would terminate his voice in the management of the company, is a matter of such an extraordinary nature that notice of the intended action must be specially given. The policyholders cannot be charged with notice that such a change would be either made or applied for at any meeting of the company unless notice of the intention to make the change was expressly given, either by the call for the meeting or perhaps by personal notice. In the present case, the resolution to make the change was first passed at a regular meeting in January, 1898, without a special notice that it was to be brought before the meeting, but subsequently the proceedings under this resolution were abandoned or suspended by reason of the refusal of the department of insurance to grant the certificate. The proceedings for the change are now being taken under the authority of a resolution passed at the meeting held in January, 1899, after the complainant became a member of the company, the meeting being the regular meeting for the election of directors. There is in the charter or by-laws no express provision that this shall be the annual meeting, but this meeting for the election of directors seems to have been taken as the annual meeting. The charter of the company (article 5, section 1) provides that at the annual meeting or any general meeting of the corporation a resolution may be adopted for amending, altering or changing any of the articles of the charter or for any or all of these purposes, provided always that nothing in this article contained shall be carried into effect without the consent of a majority of the members of said corporation present at such meeting.

This provision for the action of a corporate meeting does not reach, in my judgment, to the present case. The amending, altering or changing of the articles which are referred to in that section cannot be considered to extend to a change without notice of the relation of the policyholders to the stockholders in the management of the company under the charter. Each

policyholder had the personal right to be heard and present his views before the general meeting upon the question of the change, and in order that the company at a meeting might make this change, it was necessary that notice be given to the policy-holders that this change from a mutual to a stock company was proposed. The general rule is that extraordinary matters and such as cannot be fairly embraced in the transaction of business provided for by the charter itself, cannot be taken at a meeting unless notice be given. See *People's Insurance Co.* v. *Westcott*, *14 Gray 440; Morawetz Corp.* ¶ *483; Ang. & A. Corp.* (*10th ed.*) ¶ *489.*

In the present case no notice of this kind was given and few policyholders attended the meeting. The change was directed by a vote of the stockholders. I therefore reach the conclusion that while the company has the right to make this change under the laws as they stand, that change cannot be made under the present proceedings, because it has been taken without proper notice to the policyholders who have been by the action deprived of their right to participate in the future management of the company. It was objected that the policy which has been issued in this case contained a provision of such a character as to disentitle the complainant to an injunction, this clause being one which allowed the cancellation of the policy at any time by the complainant herself without previous notice, and by the company upon giving five days' previous notice without assigning any reason. It is provided by this clause that on such cancellation there shall be a return of a proportion of the premium which has been paid, and it was urged that the right of the complainant being of this uncertain and precarious nature, she was not entitled to the protection of her right under the policy by injunction. But while this might perhaps be true, if the only right of the complainant during the proceedings which are here attacked was a pecuniary right, yet the complainant, so long as her policy exists, has more than a pecuniary right, and has a right of an entirely different character. She has a right as a policyholder to be regarded as a member of the corporation and has all the privileges of such member, including the right to

appear at its meetings and at a proper time and in a proper method present her views as to the management of the affairs of the company and take part in the election of its directors. She therefore had the right to be notified that at a meeting of the company it was proposed to take from her this right to share in the management and to be heard upon this question, and it is the protection of the complainant's rights considered in this aspect, rather than in the mere light of the amount of her pecuniary interest, that, in my judgment, entitles her to an injunction against this change. If her rights be of the character which I have supposed, they can only be protected by the preliminary injunction, and I will, therefore, advise the injunction.

There being in the case a question which, in the interest of both parties, should be put in the course of decision by the court of appeals, I will make a direction that preliminary injunction issue upon the condition that if the defendants desire to appeal and file a notice of appeal within ten days, the complainant shall consent to so speed the hearing of the appeal by stipulations as to filing of answer or otherwise as shall enable the defendants to bring on the hearing of the appeal at the next term of that court.