MARTIN V. EVENSON v. WILLIAM C. L. DEMANN and Others.[1]

December 24, 1909.

Nos. 16,380—(123).

**County Bonds — Construction of Act — Word "Already."**

Chapter 175, Laws 1905, construed, and *held* that the word "already" does not limit the operation of the act to counties that had no courthouse at the

---

[1] Reported in 123 N. W. 930.

time of its passage, but refers also to any future time; and it is *held*, that when at any time a courthouse is destroyed by fire, or other cause, the county commissioners may issue the bonds of such county in an amount not in excess of one per cent. of the assessed valuation of its real and personal property for the purpose of building a new courthouse.

Action in the district court for Red Lake county to restrain the county commissioners of that county from issuing bonds for the building of a county courthouse. Defendants' motion to dissolve the temporary injunction on the ground that it was improvidently granted, and that the complaint did not state facts sufficient to constitute a cause of action, was granted. Defendants' demurrer on the ground that the complaint did not state facts sufficient to constitute a cause of action or ground for an injunction was sustained. From the order dissolving the temporary injunction and from the order sustaining the demurrer, Watts, J., plaintiff appealed. Affirmed.

*A. A. Miller,* for appellant.

*Charles E. Boughton,* for respondents.

LEWIS, J.

This action was brought to enjoin the county commissioners of Red Lake county from issuing bonds to the extent of $35,000 for the purpose of building a new courthouse. The board claimed to have authority to act under the provisions of chapter 175, p. 224, Laws 1905, "An act to authorize the board of county commissioners of any county not already owning a county courthouse, to issue its bonds, and to use the proceeds thereof for the building of a county courthouse." Section 1 reads: "The board of county commissioners of any county of the state of Minnesota which does not already own a county courthouse, is hereby authorized and empowered to issue the bonds of said county to such an amount as, in its judgment, may be necessary, but not exceeding one per cent. of the assessed valuation of its real and personal property, as fixed by the last preceding assessment for general taxation, for the purpose of building a county courthouse in said county."

It appears from the complaint that in January, 1905, the county of Red Lake became the owner, by purchase, of a courthouse at the

county seat, but that the same was totally destroyed by fire on April 23, 1909; that six days after the fire the board of county commissioners held a meeting and adopted resolutions to build a new courthouse and to provide funds for that purpose by the issue of county bonds to the amount of $35,000, which sum did not exceed one per cent. of the total taxable valuation of the assessable property of the county. If the act refers to counties not owning a courthouse at the time of the passage of the act, April 14, 1905, then the commissioners were without authority in proposing to issue the bonds, for the reason that Red Lake county was the owner of a courthouse at that time. But if the act also referred to any future time, when the contingency might arise that any county should not be the owner of a courthouse, then the commissioners were authorized to proceed.

Lexicographers define the word "already" to mean "prior to some specified time, either future, present, or past. * * * It has reference to past time, but may be used for a future past." Webster. As used in this act, therefore, the word "already" may refer to the present—that is, the time of the adoption of the act—or to the future. The language being ambiguous, we must discover the necessity or call for such legislation. If it was intended to legislate with reference to a condition existing at the time of the passage of the act, April 14, 1905, then a serious question arises as to its constitutionality. At that particular date there might have been one or more counties within the class; but upon what sound legal basis could such counties be distinguished from those which might be placed in the same condition a day, or a week, or at any time, thereafter? Section 412, R. L. 1905, provides that each county shall provide at the county seat, and keep in good repair, a suitable courthouse. Section 784 permits counties to issue bonds for the purpose of constructing a courthouse, when the amount to be expended does not increase the net indebtedness of the county beyond the limit fixed by law, and when the proposition shall have been duly submitted to and approved by the voters of the county.

There was some reason for selecting as the subject of legislation the general condition of counties which for any cause had no courthouse, or the emergency which might arise at any time in any county

depriving it of its courthouse, such as fire, or other cause, or the creation of new counties, where a courthouse had never been acquired. This act cannot be limited to new counties to be incorporated in the future, and if there were any sound reason for legislating in favor of counties which never owned a courthouse, then all such counties should be included in the act, without distinction as to time. Either the language refers only to the time of the passage of the act, or to any time, and to all counties which may for any reason be without a courthouse. We are of opinion that this was the intention of the legislature, and construe the word "already" to have reference to the future, as well as the present.

Authorities are meager, but some of them have a bearing. In the case of Schwarzwalder v. Tegen, 58 N. J. Eq. 319, 43 Atl. 587, the act of the legislature declared that any of the mutual insurance companies already chartered by the legislature, or already organized under general laws, might, under certain conditions, become joint-stock companies; and the court adopted the construction which would give reasonable and legal effect to the act, and held that the words "already organized under general laws" meant at the time when the change was desired to be made. So a law regulating all existing railroad corporations extends to and controls railroads incorporated after, as well as before, its passage. Indianapolis v. Blackman, 63 Ill. 117.

Affirmed.

BROWN, J. (dissenting).

I am unable to concur in the construction given this statute. It was, in my judgment, passed for a special purpose, and was intended to apply only to those counties of the state not then owning or having a courthouse. As so construed, it is unquestionably constitutional. And as all statutes should, by construction, be given a prospective operation, it would also apply to all new counties as they came into existence by formal organization. But it is clear to me that the legislature did not intend by this act to repeal all those wise provisions of other statutes restricting the authority of the county board of commissioners in creating public indebtedness without the consent of the taxpayers.

JAGGARD, J.

I concur with BROWN, J.