## McHale v. Board of Commissioners of the County of Cass et al.

[No. 22,538. Filed November 18, 1913.]

1. INTOXICATING LIQUORS.—Licenses.—Rights Pending Issuance.— Under §§8321, 8323 Burns 1908, Acts 1897 p. 253, fixing the fee for a county license at $100, and providing that upon the execution of the prescribed bond, the presentation of the order of the board of commissioners granting the license, and the treasurer's receipt for $100, the county auditor should issue a license to the applicant, the applicant, on procuring an order granting him a license, had only an inchoate right thereto until he had complied with all the provisions of the law, so that a repeal of the act before he had complied with all its provisions, would leave such applicant with empty hands, in the absence of a saving clause in such repealing act. p. 392.

2. INTOXICATING LIQUORS.—Licenses.—License Fees.—Statutes.— "Now in Force."—Under the act of March 4, 1911 (Acts 1911 p. 244), repealing the former law which fixed the fee for a liquor license at $100, and providing that pending proceedings under the old law, if sufficient under such law, should to that extent be valid, and that upon execution of the bond, presentation of the order granting the license, and the treasurer's receipt for $200, the license should issue, and providing that the increase in the license fee should not apply to licenses "now in force," an applicant who had procured an order granting a license, but whose proceedings had not been fully completed by the pay-

ment of the fee and the issuance of such license when the new law went into effect, was not entitled to receive a license except on payment of $200 and presentation of the receipt to the auditor, since it is manifest that the term "now in force" refers to the time of taking effect of the act, and a license, though granted under the old law, was not in force until the fee had been paid and the license issued. pp. 393, 394, 395.

3. STATUTES. — Construction. — Use of Words. — The words and phrases used in a statute are to be construed in their plain, or ordinary and usual sense, unless it is clearly apparent that to so construe them would defeat the manifest intent and purpose of the legislature. p. 394.

4. STATUTES.—Construction.—Provisos.—One of the purposes of a proviso in a statute is to guard against public misinterpretation and for this purpose they are often introduced from excess of caution. p. 395.

5. STATUTES.—Construction.—Provisos.—Since the enacting clause of a statute is its principal part and is presumed to have embodied the main object of the act, the proviso should be strictly construed and limited to objects fully within its terms. p. 395.

From Cass Circuit Court; *John S. Lairy,* Judge.

Action by Martin McHale against the Board of Commissioners of the County of Cass and others. From a judgment for defendants, the plaintiff appeals. (Transferred from the Appellate Court under §1405 Burns 1908, Acts 1901 p. 590.) *Affirmed.*

*Fansler & Foskett,* for appellant.

*Frank V. Guthrie,* for appellees.

Cox, J.—Appellant filed before the board of county commissioners of Cass County a claim for, or petition to refund to him, $100 which, it is claimed, he was required to pay in excess of the lawful sum exacted of him for a liquor license. It appears from the averments of the claim or petition that appellant in January, 1911, gave the usual notice that he would apply, at the next ensuing February term of the board, for a retail liquor license; that pursuant to the notice he filed his application and bond with the county auditor; that on February —, 1911, the board granted his application and ordered a license to be issued to him as prayed for; that thereafter, on March 9, 1911, he applied to the county

auditor for his license and that the auditor refused to issue the same to him except upon the payment of the sum of $200, the license fee fixed by the act approved March 4, 1911 (Acts 1911 p. 244) ; that appellant, to obtain his license, but over his objections and protest paid to the county treasurer $200 and that by reason thereof, it is averred, Cass County is indebted to him in the sum of $100.

The decision of the board was adverse to appellant and he appealed to the circuit court, where a demurrer for want of facts was sustained to his pleading, which was there denominated a complaint. From a judgment following that ruling this appeal is brought and it involves the one question whether the amount of the license fee appellant was required to pay for a county license was governed by the act of 1911 or by the law which that act superseded.

The act of 1875 as amended in 1897 (Acts 1897 p. 253, §§8321, 8323 Burns 1908), fixed the fee for a county license at $100. The act concerning intoxicating liquor, 1. approved March 4, 1911 (Acts 1911 p. 244), contained an emergency clause and was, therefore, in force when appellant applied to the auditor to issue to him the license granted by the board under the old law. The act of 1911 embraced a section repealing all laws and parts of laws in conflict with the act, and the act itself embraced the entire subject-matter of saloon licensing and regulation. Section 7 of the former act on the subject, the act under which appellant's proceeding to obtain a license was begun and which was repealed by the act of 1911, provided that upon the execution of the bond required by the fourth section of the act, the presentation of the order of the board of commissioners granting him a license, and the treasurer's receipt for $100, the county auditor should issue a license to the applicant. That law did not state explicitly when, after the order of the board granting the license, the payment to the treasurer of the fee or the application of the auditor to issue it should be made.

Until the applicant complied with all the provisions of the law including presenting a receipt of the treasurer for the amount of the license fee and applied to the auditor to issue his license, his right to a license was an inchoate one, and a repeal of the statute without any provision saving it would leave him with empty hands. *Moor* v. *Seaton* (1869), 31 Ind. 11; *Zintsmaster* v. *Aiken* (1909), 173 Ind. 269, 88 N. E. 509, 90 N. E. 82; *Kohr* v. *Town of North Manchester* (1911), 176 Ind. 286, 95 N. E. 1003.

Saving provisions must appear in the act of 1911, therefore, before it can be determined that appellant was entitled to a license at all upon the order of the board made

2. in the proceeding under the prior law; and upon such provisions must depend the terms upon which he might have such license issued to him, if at all. Section 3 of the act of 1911 contains a saving clause providing "that in all cases where proceedings have been taken to obtain such license under the law in force when this act takes effect, which proceedings are pending and unfinished when this act takes effect, such proceedings, if sufficient under the law under which they were taken shall, to that extent, be valid and the same may be continued and concluded under this act." It does not appear from appellant's complaint that when he applied to the auditor on March 9, 1911, to issue a license to him on the order of the board theretofore made, that he presented any receipt from the treasurer for any sum as the license fee, nor does it appear by any averment thereof that he had, before March 4, 1911, paid to the treasurer any sum for such fee. Assuming then that at the time the act of 1911 became effective as a law, appellant had neither tendered the treasurer's receipt nor paid the fee provided by the old law, his further right to have a license issued on the order of the board made under the old law · must be determined by the provisions of the act of 1911. Section 5 of this act provides: "Upon the execution of the bond required by this act, the presentation of the order of

the board of commissioners granting the applicant a license
and the county treasurer's receipt for two hundred dollars,
the county auditor shall issue the applicant a license * * *."
Assuming that the bond which appellant's complaint averred
had been filed with the auditor at the time of his application
for license was presented to the board in February, 1911,
under the old law, would absolve him from giving the bond
required by the provision of §5 above quoted, a question we
do not decide, he was, not having paid his fee before the
taking effect of the act of 1911, at least required to pay to
the treasurer $200 and present a receipt to the auditor for
that sum.    But it is contended by counsel for appellant
that the last proviso in §5 prevents the increase in the
amount of the license fee provided for in that part
of the section above quoted from attaching to appel-
lant in this case.    That part of this proviso which is ma-
terial reads as follows:    "The increase in licenses provided
for in this act shall not apply to any license now in force,
until the expiration of the time for which such license was
granted."    The term "now in force" manifestly has refer-
ence, in the matter of time, to the time of the taking effect
of the act.    Counsel for appellant contend, with much in-
genuity and earnestness, that the word "in force" should
be so construed as to read that the increase in the license
provided for in this act shall not apply to any license now
granted but not paid for and issued.    This would violate
the rule that the words of a statute are to be construed in
their plain or ordinary and usual sense.    It is only
where it is clearly apparent that to so construe words
and phrases would defeat the manifest intent and
purpose of the legislature that the rule will be departed
from and another construction be given which will con-
form to the clearly manifest intent of the legislature.    If
the legislature had intended to exempt licenses
granted, but not paid for and issued, from the in-
crease in fees, words which would clearly express that

intent were as easily available as were the words which it did use.   It was a simple thing, easy to state in unmistakable words.   Counsel argue that there is nothing in the act which indicates an intention to compel holders of existing licenses to pay the increased fee and that therefore the proviso construed literally is wholly useless; and, it is contended, to give it any effect at all it must be construed in consonance with their contention.   One of the purposes of a proviso in a statute is to guard against possible misinterpretation and for this purpose they are often introduced from excess of caution.   2 Lewis' Sutherland, Stat. Constr. (2d ed.) §351; 26 Am. and Eng. Ency. Law (2d ed.) 680; 36 Cyc. 1161.   We think it fairly appears that such was the purpose of the legislature in inserting the proviso in the act before us.   There is another reason why the construction contended for by counsel is not permissible.   As the enacting clause of the statute is of course its principal part, and as its terms are to be presumed to have embodied the main object of the act, the proviso should be strictly construed and limited to objects fully within its terms.   2 Lewis' Sutherland, Stat. Constr. (2d ed.) §352; 36 Cyc. 1161; 26 Am. and Eng. Ency. Law (2d ed.) 680.   That appellant did not, at the time the act of 1911 went into effect, have a license in force is too clear for serious controversy.   He merely had an order upon which he might secure a license by doing certain things which the statute required. He might refrain from doing these things and never procure the license.

The fact that the former law did not provide definitely when, after the order of the board of county commissioners granting a license, the appellant should pay the fee and cause his license to be issued by the auditor, brought about some conflicting decisions by this court on the question when a license issued some time after the order granting it was made took effect. Some early cases held that in such

case the license did not relate back to the time when the order was made granting it, but that it took effect or became in force only when the license was issued, or, at least, when the applicant had done all the things required of him such as filing his bond and paying the license fee. *Houser* v. *State* (1862), 18 Ind. 106; *Schlict* v. *State* (1869), 31 Ind. 246; *Wiles* v. *State* (1870), 33 Ind. 206. Later decisions were not in harmony with these cases. *Vannoy* v. *State* (1878), 64 Ind. 447; *State* v. *Wilcox* (1879), 66 Ind. 557; *Kelley* v. *State* (1879), 69 Ind. 418. In *Keiser* v. *State* (1881), 78 Ind. 430, the law was declared to be as announced by the earlier decisions, and so it has since remained. See, also, *Dudley* v. *State* (1883), 91 Ind. 312. Counsel on both sides of the case before us indulge in much discussion of these cases, which it is unnecessary to notice further than to say that the early rule declared which was also the rule in force when the act of 1911 was passed, is in harmony with the conclusion reached in this case. In the act of 1911 the legislature, doubtless recognizing the cause for the confusion and intending to remove it, wisely provided that a license shall be dated and begin on the date the board shall grant the same, or, in case of appeal by the applicant, from the date final judgment shall be rendered by the court hearing the appeal; and that any order of the board granting a license, or renewal thereof, shall be null and void unless the applicant therefor shall, within five days after the making of the order, if not appealed from, or within fifteen days after final judgment, on appeal, pay all moneys required to be paid by him by any of the provisions of the act (Acts 1911 p. 244, §§16, 17).

Judgment affirmed.

NOTE.—Reported in 103 N. E. 321. See, also, under (1, 2) 23 Cyc. 108; (3) 36 Cyc. 1114.