EAST JERSEY WATER COMPANY, PROSECUTOR, v. BOARD OF CONSERVATION AND DEVELOPMENT, RESPONDENT.

ACQUACKANONK WATER COMPANY, PROSECUTOR, v. BOARD OF CONSERVATION AND DEVELOPMENT, RESPONDENT.

Submitted March 21, 1918—Decided April 25, 1918.

1. The defendant, as successor of the state water supply commission, certified to the state comptroller the names of each of the prosecutors above named as corporations owing money to the state for the diversion of water for the last half of the year 1915 and for the year 1916, and the sums due from each for each period, under Water-Supply act. *Comp. Stat.*, p. 5797. The statute requires such certificate to be filed between January 1st and February 15th in each year. The certificates in ques-

tion were not filed until February 17th, 1917. *Held*, that the statute as to filing was not mandatory, and the omission of the state water supply commission or its successor, to file the certificates before February 15th in each year did not forfeit the right of the state to collect the sums subsequently certified, the right of appeal being allowed and availed of.

2. The words of the statute "now being legally diverted" means the amount being diverted according to law in 1907 when the act went into effect, and do not extend to a quantity which, by contract, the corporation may subsequently require to supply increased needs of those with whom it has contracted to supply water. An abstractor may take what it was in 1907 diverting, and, if that did not reach the statutory maximum exemption, as much more as is required to make the total maximum diversion allowed without payment of the license fee. If in 1907 the daily diversion exceeded one hundred gallons per capita, the amount then diverted may be taken without payment, and if it was less, no license fee can be imposed until it exceeds the statutory quantity.

On *certiorari*.

Before Justices BERGEN and BLACK.

For the prosecutor, *Humphreys & Sumner*.

For the respondents, *John W. Wescott*, attorney-general, and *Herbert Boggs*, assistant attorney-general.

The opinion of the court was delivered by

BERGEN, J. The questions involved in the above cases are similar, were argued together, and can be disposed of in one opinion.

The board of conservation and development certified to the state comptroller the amounts of money claimed to be due to the state from the foregoing prosecutors, respectively, for water diverted from streams for the purpose of a public water-supply, between July 1st, 1915, and December 31st of the same year, and also from the East Jersey Water Company, between January 1st and December 31st, in the year 1916, as well. The comptroller of the state demanded payment thereof and a writ of *certiorari* was allowed to review the proceedings

upon which the demand was based. The power of the commission to fix the amount and certify it to the comptroller, and his right to demand payment, is based upon a statute entitled "An act to establish a state water-supply commission, and to define its powers and duties, and the conditions under which waters of this state may be diverted" (*Pamph. L.* 1907, p. 633; *Comp. Stat., p.* 5799), section 8 of which provides that "every municipality, corporation or private person now diverting the water of streams or lakes with outlets, for the purpose of a public water-supply, shall make annual payments on the first day of May to the state treasurer for all such water hereafter diverted *in excess of the amount now being legally diverted,*" provided no payment shall be required until such diversion exceeds one hundred gallons *per capita* daily of the persons supplied, the payments required being based on the amount diverted in excess of the amount so fixed, and to be deemed a license, the amount of the payment to be fixed by the commission at a rate prescribed by the act. The statute further provides that the commission shall certify to the state comptroller, as soon as practicable after the 1st day of January, and not later than the 15th of February of each year, the names of all corporations or persons owing money to the state for the diversion of water during the preceding year with the amount due; that the state comptroller shall promptly notify such debtors of the amount of their indebtedness to the state, and if not paid on or before the 1st day of July of the same year, the default shall be certified by the state comptroller to the attorney-general, who shall take immediate steps to collect the same.

It is conceded by the prosecutors that the commission certified to the comptroller the names of the two prosecutors and the amounts due from each on the 17th day of February, 1917, and that this certificate was subsequently amended by reducing the sums claimed to be due, and the amended certificate filed with the comptroller of the state, about the 9th day of March, 1917. It is also conceded that the amounts fixed are correct and should be paid if the prosecutors are liable.

The first point which both prosecutors urge relates to the charge for the half year ending December 31st, 1915, which is that, as to this license fee, they are not liable because it was not fixed prior to the 15th of February, 1916, the argument being that this requirement of the statute is mandatory, and if the commission neglect to fix the amount and certify it to the comptroller before that date, the right of the state is forfeited.

The prosecutors in their brief insist that the requirements of the act as to ascertainment of the amount due, and the machinery established for the collection of these debts, is mandatory, and, if not strictly complied with, no payment can be enforced by the state. They do not contest the rule that statutes directing the mode of proceedings of public officers are usually held to be directory, and that a strict compliance with such a provision is not essential to the validity of the proceeding unless there is something in the statute which shows a different intent, but they argue that the provision that the certificate shall be made not later than the 15th day of February in each year is mandatory, and an express limitation on the right of the state to enforce the payment if default be made, and they further argue that unless this be so the state might enforce such a payment after holding in suspense for an indefinite time, even as long as one hundred years. It is not necessary in this case to speculate regarding conditions a century hence, or even for a shorter period, or whether an undue delay might warrant an inference of the abandonment of such right, for in this case the prosecutors lose nothing by the delay. They were accorded the right to appeal, and their appeal was heard and considered, and was just as effective as if made a year earlier. The statute provides that any party aggrieved by the action of the commission may file a written complaint on or before March 20th, which shall be heard and the appellant permitted to give evidence of the facts, all of which was accorded the prosecutors in this case, and they availed themselves of it.

It also requires the commission to certify to the comptroller the amount due as soon as practicable after the 1st day of

January, and not later than the 15th day of February in each year. This, we think, is directory and not mandatory; and if the certificate was not filed with the comptroller before March 20th in any one year, the right of the delinquent to appeal would not be lost. The requirement to file the certificate not later than the 15th day of February in each year is not an express limitation, and the omission or neglect to do so does not work a forfeiture of the right of the state to collect the license fee, if the certificate be subsequently filed and an opportunity for appeal afforded.

It is next urged that the present defendant was the successor of the state water-supply commission by virtue of the statute (*Pamph. L.* 1915, *p.* 426), which provides that it shall not take effect, or be construed to include the state water-supply commission until the 30th day of June, 1916, and that the state water-supply commission shall retain all its powers and continue to discharge them until that date, so that it was its duty to make the certificate for the year 1915, but we see no reason why the defendant could not perform, after it came into office, the duty which its predecessor had neglected. The liability to pay had been fixed by statute, and it was a mere matter of calculation to ascertain the amount due. We can perceive no legal reason why this license fee should be canceled, or the state denied its right to collect it, for any of the reasons so far considered.

The writ of *certiorari* allowed the Acquackanonk Water Company is limited to a review of the order certifying the amount due for the last six months of the year 1915, and it is not concerned in the question raised by the East Jersey Water Company relating to the certificate for the year 1916, and therefore as to the Acquackanonk company the proceedings will be affirmed.

On behalf of the East Jersey company it is argued that both license charges are illegal because prior to June 15th, 1907, when the original act went into force, that company was under contract to supply certain municipalities with whatever quantities of water they from time to time required, and to pump and filter all the water used by other water companies

which were under contract to furnish a supply of water to certain municipalities, and that it was legally diverting in 1907 such quantity of water as was then, or might in the future be, required to supply its contracts, at least to its then capacity of sixty-five millions gallons daily, while its then actual diversion did not exceed twenty-eight millions gallons daily. The defendant certified to the comptroller as due a sum based on the actual diversion in 1907, and the correctness of the amount and computation is not questioned, the complaint being that the water company is not required to pay for excess diversion where it is required to supply municipalities with which it had then contracted for whatever quantities they from time to time required. In other words, there can be no excess subject to the license fee so long as the diverted water is required to fulfill the contracts.

This construction will make the statute inefficacious because the growing demands of the different contracting municipalities for water may take the entire flow of the Passaic river, and ought not to be adopted unless required by the statute in plain terms. The statute requires payment "for all such water hereafter diverted in excess of the amount now being legally diverted," with the proviso that no payment be required until the legal diversion shall exceed one hundred gallons per day *per capita.* We are of opinion that "legally diverted" means not a future diversion, but one now being exercised under a legal right, and that under this statute a legal abstractor may take what he was diverting in 1907, and, if that did not reach the statutory maximum of exemption, as much more as is required to make the total diversion one hundred gallons per day *per capita* for each of the municipalities supplied, without payment of the license fee.

If, in 1907, the daily diversion exceeded one hundred gallons *per capita,* the amount then diverted, if lawful, may be taken without payment, and if it was less, no license fee can be imposed until it exceeds the statutory quantity. We do not deem it of any importance what disposition the East Jersey Water Company makes of the water after diversion;

it is the original person or corporation who diverts that the statute applies to. The license fee was imposed on the excess diverted beyond the amount actually being taken in 1907, and that being, in our view, a correct construction of the law, we find no error in this record.

This leads to an affirmance, with costs, of all the license fees imposed which are now under review in both cases.