## GOVERNMENTAL RESEARCH BUREAU, INC. v.
## ST. LOUIS COUNTY AND OTHERS.

104 N. W. (2d) 411.

July 1, 1960—No. 38,081.

*Nye, Montague, Sullivan & McMillan* and *Donald D. Harries,* for appellant.

*Thomas J. Naylor,* County Attorney, and *George B. Sjoselius,* Assistant County Attorney, for respondents.

Murphy, Justice.

This is an appeal from a declaratory judgment which upheld the 1959 St. Louis County tax levy for its road and bridge fund. We are called upon to construe that part of L. 1933, c. 359, as amended by L. 1949, c. 723, which is now M. S. A. 273.13, subd. 7a, and which provides:

"For the purpose of determining salaries of all officials based on assessed valuations and of determining *tax limitations* [and net bonded debt limitations] *now established by statute* or by charter, class 3b and class 3c property shall be figured at 33 1/3 percent and 40 percent of the full and true value thereof, respectively." (Italics and brackets supplied; the words within brackets were repealed by L. 1949, c. 723.)

Our decision must turn upon the meaning of the words "tax limitations *now* established by statute" as used in the foregoing provision. The plaintiff taxpayer contends that the word "now" refers to tax limitations in effect at the time of the enactment in 1933. The trial court agreed with the county's contention that the word "now" as used in the act is prospective in connotation and refers to the time of making the levy, which in this case occurred in 1959.

The issue must be viewed against its factual background. The 1959 road and bridge fund levy by St. Louis County amounted to $2,544,000. That county under M. S. A. 163.05, subd. 3, was limited to a 12-mill rate of the taxable valuation of the county for road and bridge fund purposes. If the county is permitted to include within its total assessed valuation an amount representing 33 1/3 and 40 percent of the assessed valuation of urban and rural homestead property, respectively, the 12-mill limit will not be exceeded. If, however, such property is included in the total taxable valuation of the county on a basis of 20 to 25 percent of its appraised value, the total taxable valuation of the county will be decreased almost 14 million dollars and, as a consequence, the millage rate for road and bridge fund purposes will exceed the 12-mill limit.

The plaintiff correctly points out that when the 1933 act was passed the millage rate for road and bridge fund purposes was 10 mills. It

contends that, since that rate has now changed, the higher valuations of 33 1/3 and 40 percent may no longer be used. It concludes that the current millage rate of 12 mills must be applied to the lower valuations of 20 and 25 percent, because the current 12-mill limitation was not "now established" when the act was passed in 1933. The plaintiff asserts that the permissive percentages provided for by § 273.13, subd. 7a, expired by their own terms when the tax limitation ceased to be 10 mills, or the rate "now established" when that authority was granted in 1933. The plaintiff does not complain of a levy at the rate of 12 mills as now authorized if applied to the taxable valuation on which taxes on homesteads are actually paid,[1] but objects to the computation of values at the higher percentages of 33 1/3 and 40 percent on the first $4,000 in value of homesteads.

■ In support of its position that the 12-mill limit is not one "*now* established" within the meaning of subd. 7a, plaintiff cites § 645.45, which provides:

"The following words and phrases, when used in any law hereafter enacted, unless the context clearly indicates otherwise, shall have the meanings ascribed to them in this section:

\*    \*    \*    \*    \*

"(19) 'Now,' in any provision of a law referring to other laws in force, or to persons in office, or to any facts or circumstances as existing, relates to the laws in force, or to the persons in office, or to the facts or circumstances existing, respectively, on the effective date of such provision."

Even in the absence of a provision relating to the construction of the word "now" in a statutory or constitutional provision, many courts have ruled that "now" refers to the date when the provision itself became effective rather than to some later date. Buffington v. State, 2 Misc. (2d) 496, 152 N. Y. S. (2d) 716; Buckingham v. District Court, 60 Nev. 129, 102 P. (2d) 632; In re Application of Marino,

---

[1]Twenty percent of full and true value in the case of rural homesteads, 25 percent in the case of urban homesteads under M. S. A. 273.13, subds. 6 and 7.

23 N. J. Misc. 159, 42 A. (2d) 469; Nutt v. United States, 26 Ct. Cl. 15; Beard v. Smith, 22 Ky. 430; In re McNabb (D. C. D. Ore.) 175 F. 511; Roe v. Davis, 106 Tex. 537, 172 S. W. 708; Rail v. State, 135 Tex. Cr. 418, 120 S. W. (2d) 252; Barrow v. Wilcoxson, 91 Colo. 278, 14 P. (2d) 1095; East Jersey Water Co. v. Board of Conservation and Development, 91 N. J. L. 448, 103 A. 853; McHale v. Board of Commrs. 180 Ind. 390, 103 N. E. 321; Easby's Petition, 124 Pa. Super. 578, 189 A. 548; State ex rel. Chittenden v. Harmon, 87 Ohio St. 364, 101 N. E. 286; State ex rel. Bumsted v. Henry, 74 N. J. L. 162, 64 A. 475, affirmed, 74 N. J. L. 790, 67 A. 375; State ex rel. Pierson v. O'Connor, 54 N. J. L. 36, 22 A. 1091; State v. Bossa, 69 Conn. 335, 37 A. 977.

Other courts, however, have refused to so construe the word "now" when it was felt that under the circumstances of the particular case such a limited construction would be inconsistent with the purpose of the statute, render it a nullity, or result in absurdity. Arkansas Utilities Co. v. City of Paragould, 200 Ark. 1051, 143 S. W. (2d) 11; Protest of Chicago, R. I. & P. Ry. Co. 137 Okl. 186, 279 P. 319; State ex rel. Brewster v. City of Lawrence, 101 Kan. 225, 165 P. 826; Matter of Moskowitz v. La Guardia, 183 Misc. 33, 48 N. Y. S. (2d) 174. No Minnesota cases in point have been brought to our attention, and we have found none. The briefs and arguments of counsel dwell at length upon the legislative procedures relating to the 1949 amendment to the act and the semantics of its composition. After careful consideration, however, we must conclude that the reasoning derived from this material can only lead to a speculative result.[2]

The words of a statute are not to be isolated, and their meaning

---

[2]The meaning of the word "now" or use of the present tense is discussed at some length in Protest of Chicago, R. I. & P. Ry. Co. 137 Okl. 186, 279 P. 319; Acme Oil & Gas Co. v. Cooper, 168 Okl. 346, 33 P. (2d) 191; Arkansas Utilities Co. v. City of Paragould, 200 Ark. 1051, 143 S. W. (2d) 11; State ex rel. Brewster v. City of Lawrence, 101 Kan. 225, 165 P. 826. In the last of these cases the Kansas court discusses the word "already" as being synonymous with the word "now." In Evenson v. Demann, 109 Minn. 328, 123 N. W. 930, we construed the word "already" to have reference to the future as well as the present.

must be found in the context and purpose of the statute as a whole. Furthermore, as Mr. Justice Mitchell pointed out in his dissenting opinion in Ott v. G. N. Ry. Co. 70 Minn. 50, 55, 72 N. W. 833, 834, "canons of construction are never the masters of the courts, but merely their servants, to aid them in ascertaining the legislative intent." See, Matter of Moskowitz v. La Guardia, *supra*. This rule applies both to the canons of construction enunciated by this court and to those stated in M. S. A. c. 645, as the legislature expressly recognized in § 645.08:

"In construing the statutes of this state, the following canons of interpretation are to govern, *unless their observance would involve a construction inconsistent with the manifest intent of the legislature, or repugnant to the context of the statute."* (Italics supplied.)

In attempting to discover the intent of the legislature in enacting L. 1933, c. 359, its history should be examined. The act was passed in a period of economic depression. Its object was to give tax relief to the homestead owner by reducing the assessed valuation of his homestead property. It was not intended, however, that such reduction should decrease the total assessed valuation of the county. The reduction was to be shifted to other property. Prior to the 1933 amendment of § 273.13, rural homestead property was valued at 33 1/3 percent of the full and true value for tax purposes, urban property was valued at 40 percent of full and true value, and each other type of property was included in one of several other "classes" and valued at designated percentages of their full and true value. By L. 1933, c. 359, two additional classes were created, class 3b and class 3c. The act provided in part:

"All unplatted real estate, except as provided by class one (1) hereof and which is used for the purposes of a homestead, shall constitute class three 'b' (3b) and shall be valued and assessed at twenty (20) per cent of the true and full value thereof. Provided, if the true and full value is in excess of the sum of $4,000.00, the amount in excess of said sum shall be valued and assessed as provided for by class three (3) hereof.

"All platted real estate, except as provided by class one (1) hereof and which is used for the purposes of a homestead, shall constitute class 3c and shall be valued and assessed at twenty-five (25) per cent of the true and full value thereof. Provided, if the true and full value is in excess of the sum of $4,000.00, the amount in excess of said sum shall be valued and assessed as provided for by class four (4) hereof."

It is clear that the legislature recognized that the effect of the foregoing act would be to reduce the total valuation of taxable property and unless a compensating provision was added an imbalance would result. It was recognized that salaries of officials which were based on assessed valuations would be affected as well as tax money needed for commitments upon which the legislature had placed tax limitations. To stabilize the total taxable valuation of the county, the legislature adopted § 273.13, subd. 7a, for the purpose of giving the county the right to restore the taxable valuation which was lost because of homestead benefits provided by classes 3b and 3c. The act provided that where the revenue was needed for the purposes referred to in subd. 7a the assessed valuations "shall be figured at 33 1/3 percent and 40 percent of the full and true value thereof, respectively." The net effect of the 1933 act was to lessen the tax burden on the homestead owners without reducing the total amount of tax revenues that the county was authorized to collect. In 510 Groveland Avenue, Inc. v. Erickson, 201 Minn. 381, 385, 276 N. W. 287, 289, we pointed out that:

"* * * All that was done by the law of 1933 was to declare new and reduced proportions of value whereon to tax homesteads but to preserve former and higher rates for the figuring, that is the application, of tax limitations."

In view of the manifest legislative purpose we do not think it was intended that subd. 7a should apply only so long as the particular mill rate in effect in 1933 remained unchanged. From an examination of the history of road and bridge fund levies it appears that the mill-rate limitation on the levy for that purpose in 1933 was an amount not exceeding 10 mills on the dollar of taxable valuation and in 1959

was an amount not exceeding 12 mills on the dollar of taxable valuation of the county.[3]

If we are to adopt the construction urged by the plaintiff it might be justifiably said that in the year of 1953, at which time the limit was to have been 10½ mills, the tax income produced on the lower homestead valuation would be less than that produced on the basis of valuations in force prior to the enactment of c. 359. It can hardly be urged that the legislature intended that result. Nor do we believe that it can be fairly said that the legislature intended the changed millage rates would apply to the lower valuations. Because of the growing importance of highway improvements as a necessary public service and of the increasing cost of such service from year to year, it is not reasonable to assume that the legislature intended a result which would leave a county in a position where it would have less money to use for roads and bridges than it would have had before the act was passed.

The meaning of the word "now" as used in M. S. A. 273.13, subd. 7a, must be found in its context as part of a general statute, the broad purpose of which is to have future application in giving tax relief to homestead owners without depriving taxing authorities of the right to use the total assessed valuation of the county for taxing purposes. So construed, the word "now" is prospective in meaning and applies not only to tax limitations in effect when the act was passed but to subsequent tax limitations in effect at the time of making the levy.

We think this construction is supported by Matter of Moskowitz v. La Guardia, 183 Misc. 33, 48 N. Y. S. (2d) 174, where the New York court was faced with an analogous question. The New York statute provided: "The salaries of the attendants and the librarian of the county court of Kings county are hereby equalized and fixed at the same amount per annum as is *now* paid to attendants and the librarian

---

[3]The maximum authorized mill rate for counties of the size of St. Louis County in 1933 was 10 mills. That limit was in effect until L. 1951, c. 548, changed it to 11½ mills for the levies of 1951 and 1952 and to 10½ mills for subsequent levies. L. 1953, c. 444, § 1, changed the mill limit to 12 mills, where it has since remained.

of the supreme court in such county." (Italics supplied.) The respondent in that case urged that the equalization of salaries was to be given effect only as of the date when the statute was enacted and cited to the court a provision of the General Construction Law almost identical in language to our § 645.45(19). Nevertheless, that court refused to be bound by that provision or by the common meaning of the word "now." It rejected the respondent's argument because (183 Misc. 39, 48 N. Y. S. [2d] 179) "it is evident the intent was to make the salaries of the attendants in the two courts equal not only then but always." We feel that it is also evident that in the instant case the legislature intended to preserve the county's taxing power not only when L. 1933, c. 359, was enacted, but always.

This construction of subd. 7a is in accord with opinions of the attorney general. Report Attorney General, 1942, No. 199; Report Attorney General, 1952, No. 225. The latter opinion, after a thorough discussion of this precise issue, concluded (p. 401):

"* * * it is our opinion that provisions in L. 1933, C. 359, * * * are and have been in continuing effect since the enactment of said Chapter 359, * * * Subdivisions 6, 7 and 7a, applying to all tax limitation provisions, statutory or charter, in effect on the effective date of Chapter 359 or subsequently effective."

While the opinions of the attorney general are not binding on this court, they are nevertheless entitled to careful consideration where they are of long standing and accompanied by administrative reliance thereon. Moreover, practical construction of a statute by public officials should not be ignored. The construction placed upon the statute by the attorney general was followed by the auditor of St. Louis County prior to the instance challenged here. Mr. Andrew Korda, a witness from the county auditor's office, testified that subd. 7a had been applied in computing the legal limit for a 1953 tax levy for the work-farm fund. The mill limit applicable to work-farm fund taxes under § 643.10 had been changed from 1/5 to 3/10 of 1 mill by L. 1939, c. 55.

■ The plaintiff also argues that L. 1933, c. 359, as construed by the lower court contravenes the requirement of Minn. Const. art. 4,

§ 27, that "No law shall embrace more than one subject, which shall be expressed in its title." Tax limitations, the plaintiff asserts, are not germane to classifications of property for tax purposes.

In C. Thomas Stores Sales System, Inc. v. Spaeth, 209 Minn. 504, 509, 297 N. W. 9, 13, we ruled that:

"The subject of a statute is the matter to which it relates and with which it deals. A subject embraces all provisions which are germane to it; they may be parts of it, incident to it, or means auxiliary to the end in view. The subject must be single; the provisions by which the object is accomplished may be multifarious. The constitutional provision ought to be practically and liberally construed. In Johnson v. Harrison, 47 Minn. 575, 50 N. W. 923, 924, 28 A. S. R. 382, we said:

" 'All that is necessary is that the act should embrace some one general subject; and by this is meant, merely, that all matters treated of should fall under some one general idea, be so connected with or related to each other, either logically or in popular understanding, as to be parts of, or germane to, one general subject.' Our cases are collected in 6 Dunnell, Minn. Dig. (2 ed. & Supps.) § 8910."

We hold that L. 1933, c. 359, embraces only the one general subject—classification of property for tax purposes—and both the use of percentages of full and true value of property for purpose of taxation and the use of such percentages for the purpose of tax limitations are germane to that subject.

The district court's decision is affirmed.

Affirmed.