In the Matter of the Application of Edward **BARTELL** and Barko Hydraulics, Incorporated, for a Permit to Place Fill in the Bed of Lake Superior, Appellants,

v.

**STATE of Minnesota, Respondent.**

No. 49148.

Supreme Court of Minnesota.

Oct. 12, 1979.

Harper, Eaton, Peterson & Overom and
Wayne E. Gilbert, James Harper, and Timo-
thy O. Lee, Duluth, for appellants.

Warren Spannaus, Atty. Gen., C. Paul Faraci, Deputy Atty. Gen., and Steven J. Johnson, Sp. Asst. Atty. Gen., St. Paul, for respondent.

ROGOSHESKE, Justice.

Edward Bartell and Barko Hydraulics, Inc. (Barko) appeal from an order of the district court affirming in all respects an order of the Commissioner of the Department of Natural Resources (DNR). The DNR's order denied Barko's application for a retroactive permit to place fill in the bed of Lake Superior and requires Barko to remove the illegally placed fill and to restore the lakebed to its natural condition. The issues raised are: Whether the Federal Water Pollution Control Act Amendments of 1972, which added § 404 (Pub.L.No.92–500, § 404, 86 Stat. 884), preempted all authority of the state of Minnesota to regulate the dumping of fill into navigable public waters; and whether the DNR's order is unenforceable. We conclude that state authority to regulate is not preempted and that, at present, there is no impediment to enforcement of the order. We further conclude, however, that the record is inadequate to determine whether the law was correctly applied in issuing the removal order. We therefore affirm the denial of the permit but reverse and remand to the district court for resolution of the issue of the DNR's authority to order removal of fill deposited prior to 1973 and with instructions to remand to the DNR for the purpose of conducting a hearing on the issue of the extent to which the lakebed must be restored to its prefilled condition.

In 1946, Barko acquired property on Duluth harbor as a site for the manufacture of truck equipment. Thereafter, Barko periodically dumped fill material into Lake Superior to serve as a storm barrier and prevent erosion due to wave action. Edward Bartell, vice president and shop manager of Barko, was aware of state permit requirements for such filling activities and was warned in 1969 against continued filling without a permit. He testified that it was common practice for neighboring landowners to deposit fill without a permit and that he, therefore, did so also.

From November 27 through December 2, 1974, Barko placed fill in the bed of Lake Superior without a permit and admittedly not in response to an emergency. The fill was rock and earth removed from a street construction site by a local contractor doing work for the city of Duluth. The contractor dumped the fill, which he estimated to be a maximum of 700 cubic yards, on Barko's property and Mr. Bartell bulldozed it into the lake. Mr. Bartell never consulted an engineer about designing an effective breakwater and had no specific plan for placement of the fill. On December 3, 1974, Conservation Officer Carl Sandstrom received a report of illegal filling at the Barko property and halted the filling activities. On December 5, 1974, an inspection by DNR personnel revealed large quantities of illegally placed fill. John Clausen, DNR hydrologist, estimated the fill to encroach on the lakebed 60 feet along 150 feet of shoreline. He judged the depth of the fill to be 8 to 10 feet above the water surface with an additional 5 feet below the water surface. This estimate was borne out by a subsequent inspection and survey conducted by the DNR on May 14, 1975, except that the length of shoreline involved was found to be 200 feet. The total volume of illegally placed fill was at that time estimated to be 5,000 cubic yards. Mr. Clausen observed during both inspections that the rocks and earth were eroding into the lake.

On January 16, 1975 the city of Duluth charged Barko with the misdemeanor offense of altering the cross section of public waters without a permit. Barko applied for a retroactive permit on April 2, 1975. Approximately 3 weeks later, Barko sold the property to Kuettel Brothers, Inc. On September 22, 1975, the DNR, without a hearing, denied the permit application and ordered Barko to remove the fill and restore the lakebed. Barko demanded a hearing, which was subsequently held on April 13, 1976. On September 14, 1976, the DNR

again denied the application and ordered removal of the fill based on conclusions that the applicant's plans were not reasonable or practical and would not protect the public safety or promote the public welfare; that the filling was excessive and ineffective; and that more prudent alternatives existed. Barko appealed to the district court which, on May 17, 1978, affirmed the order of the DNR. This appeal followed.

Barko first argues that Congress, by enacting the 1972 amendments to the Federal Water Pollution Control Act (FWPCA), intended to preempt state programs regulating placement of fill in public waters. Barko relies primarily on § 404, which authorized the Secretary of the Army, acting through the Chief of Engineers, to issue permits for the discharge of dredged or fill material into navigable public waters. Pub. L.No.92–500, § 404, 88 Stat. 884. Section 301 requires all dischargers to obtain such permits. 33 U.S.C.A., § 1311. While the 1972 amendments expanded the federal role in water pollution control, traditionally an area of state concern, § 101(b) provides: "It is the policy of the Congress to recognize, preserve, and protect the primary responsibilities and rights of States to prevent, reduce, and eliminate pollution * * *." 33 U.S.C.A., § 1251. In addition, § 510 specifies that, except as expressly provided, nothing in the FWPCA is to "be construed as impairing or in any manner affecting any right or jurisdiction of the States with respect to the waters (including boundary waters) of such States." 33 U.S.C.A., § 1370.

■ Because there is no explicit statement of preemption with regard to dredge and fill permits in the FWPCA as it existed

in 1972, this court must determine whether preemption is to be inferred. In *Jones v. Rath Packing Co.*, 430 U.S. 519, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977), the United States Supreme Court summarized the principles to be applied in resolving the issue. Where the field which Congress is said to have preempted has been traditionally occupied by the states, the assumption is that the historic police powers of the states were not to be superseded unless that was the clear and manifest purpose of Congress. If a state statute as written, interpreted, and applied stands as an obstacle to the purposes and objectives of Congress, it must give way.

■ In 1977, Congress clarified its intention in enacting § 404 by amending that section to provide: "Nothing in this section shall preclude or deny the right of any State or interstate agency to control the discharge of dredged or fill material in any portion of the navigable waters within the jurisdiction of such State * * *."[1] 33 U.S.C.A., § 1344. Having found no evidence to the contrary in either the 1972 amendments or their legislative history, we conclude that this amendment clearly indicates congressional intent that states exercise concurrent jurisdiction over dredging and filling, at least where the activities do not involve the navigability of the waters. Barko's placement of fill in the bed of Lake Superior concededly has no significant impact on the shipping channel. We find no conflict between § 404 of the FWPCA and Minn.St. 105.42.

■ Barko next argues that the order to remove the fill and restore the lakebed issued by the DNR and affirmed by the district court is unenforceable since the

1. Congress enacted the amendment in response to an unintended construction by the courts. In *EPA v. California ex rel. State Water Resources Control Board*, 426 U.S. 200, 96 S.Ct. 2022, 48 L.Ed.2d 578 (1976), the United States Supreme Court held that federal agencies were not subject to state regulation under FWPCA programs in the absence of unambiguous congressional authorization. In *State of Minn. by Spannaus v. Hoffman*, 543 F.2d 1198 (8 Cir. 1976), certiorari denied, 430 U.S. 977, 97 S.Ct. 1672, 52 L.Ed.2d 373, the Eighth Circuit Court

of Appeals concluded, based on the supremacy clause, that the Army Corps of Engineers was not required to obtain state permits for dredging and that it need not meet state water pollution standards, at least with regard to activities essential to navigation and maintenance of interstate commerce. The legislative history indicates that the amendment was designed to specifically overrule these decisions. S.Rep. No.95–370, 95th Cong., 1st Sess. 67, reprinted in 1977 U.S.Code Cong. & Admin.News, pp. 4326, 4392.

present owner of the property was not made party to the proceedings and no notice of lis pendens was recorded. Barko contends that reclamation by depositing fill was a proper exercise of riparian rights giving rise to new land which became an integral part of the upland and was transferred to Kuettel Brothers. We have frequently stated that exercise of riparian rights is subject to state regulation in the public interest. *State v. Korrer*, 127 Minn. 60, 148 N.W. 617 (1914); *Miller v. Mendenhall*, 43 Minn. 95, 44 N.W. 1141 (1890); *Union Depot Co. v. Brunswick*, 31 Minn. 297, 17 N.W. 626 (1883). Since Barko placed the fill in the lakebed illegally, it did not acquire any rights in the reclaimed land that it could transfer to Kuettel Brothers. Furthermore, the certificate of title states that the property was conveyed by Barko "[s]ubject to the sovereign rights of the State of Minnesota in all that portion of said lands lying between the original shoreline of Lake Superior and the established harbor line." For these reasons we conclude that the conveyance to Kuettel Brothers transferred no ownership interest in the filled land that would require joinder of the present owner as a party to these proceedings. We also observe that Barko lacks standing to raise the issue of the DNR's failure to file a notice of lis pendens, since the sole function of lis pendens is to give constructive notice of the pendency of an action to subsequent purchasers of real property. Other hypothetical impediments to enforcement of the order presented by Barko as a basis for relief are raised prematurely and must await resolution in a concrete factual context.

■ Despite our agreement with the DNR and the district court on the issues of preemption and enforceability of the order, we believe that the matter must be remanded for additional proceedings. The district court, in upholding the removal order, relied on Minn.St. 105.461. That provision, which expressly authorizes the commissioner to order restoration of public waters or their beds to the condition existing before a permit applicant undertook unlawful activities, was enacted in 1973. The extent of agency authority prior to 1973 is unclear. In 1961 the attorney general issued an opinion which concluded that the express authority to refuse permission to place fill in the public waters carried the implied authority to order the removal of fill unlawfully placed. Opinions Attorney General 273c–6, May 3, 1961. While we have stated that we will carefully consider such constructions when they are of long standing and accompanied by administrative reliance, in this case we are unable to determine prior agency practice from the record. See, *Governmental Research Bureau, Inc. v. St. Louis County*, 258 Minn. 350, 104 N.W.2d 411 (1960). Our review of the case law indicates only that we have upheld the commissioner's power to petition the district court for an injunction, ordering removal of illegally placed fill. *State, Department of Conservation, v. Sheriff*, 296 Minn. 177, 207 N.W.2d 358 (1973). Barko admittedly has placed fill in the lakebed without a permit since 1946. The DNR's order requires removal of the entire amount of fill in position. While the DNR could have proceeded to obtain removal of fill placed by Barko prior to 1973 by petitioning the court for an injunction, the issue of the DNR's implied authority to order removal prior to 1973 has not been litigated. We therefore remand to the district court for its determination of the issue whether the removal order is in excess of statutory or other agency authority. Depending upon the conclusion reached, further remand to the DNR will likely be necessary.

We also observe that the order requires that the lakebed be restored to its prefilled condition by removal of the 5,000 cubic yards of fill described in the permit application. Barko apparently simply adopted the DNR's estimate for purposes of the application, and the DNR considered Barko bound by that representation despite evidence offered tending to show that the amount of fill deposited was considerably less. Furthermore, evidence presented by the DNR indicated that in May 1975, less than 6 months after Barko's unlawful activities, approximately 3,000 cubic yards of the fill

had eroded into the lake. Compliance with the order by removing 5,000 cubic yards of material from the lakebed may, therefore, result in environmentally harmful dredging. In our view, if the earth and rock has continued to dissipate, the removal issue may well be moot. While it is disconcerting that protracted litigation may, in effect, preclude the DNR from adequately protecting the environment in cases such as this, the legislature has not seen fit to provide for expedited appeal procedures under Minn.St. 105.461, and the DNR has not pursued any other remedy which may have been available. We conclude that the record is inadequate on the issue of the extent to which the lakebed ought to be restored. We reverse and remand to the district court with instructions to remand to the DNR upon resolution of the authority issue for the purpose of determining the amount of fill to be removed.

Our opinion filed August 3, 1979, is withdrawn and this opinion is substituted for it. Petition for rehearing is denied.

Remanded.

OTIS, J., took no part in the consideration or decision of this case.